

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-16-00209-CV

Candelaria **GARCIA**,
Appellant

v.

**STATE FARM LLOYDS** and Sylvia Garza,
Appellees

From the County Court at Law, Starr County, Texas
Trial Court No. CC-15-106
Honorable Romero Molina, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  December 14, 2016

AFFIRMED

In the underlying lawsuit, Candelaria Garcia alleged State Farm Lloyds and Sylvia Garza

(collectively, "appellees") failed to properly investigate and adjust an insurance claim made under

Garcia's State Farm homeowner's policy.  After the lawsuit was filed, the parties agreed to an

appraisal for the purpose of determining the amount of the loss.  After completion of the appraisal,

State Farm paid the appraisal award and appellees moved for summary judgment on all of Garcia's

claims.  Garcia then amended her petition to ask that the appraisal award be set aside.  The trial

court rendered summary judgment in favor of appellees and signed a final judgment disposing of all of Garcia's claims. Garcia now appeals the trial court's summary judgment.

## BACKGROUND

In 2014, State Farm issued a homeowner's policy to Garcia providing coverage for her home. Following storm damage to her house, Garcia retained a private adjustor to "examine, investigate, estimate, collect documentation, and communicate" with State Farm with regard to any and all claims for damages. One day later, on January 22, 2015, Garcia submitted a claim to State Farm for hail-related and possibly wind-related damage to her house. State Farm assigned the claim to its own adjustor, Sylvia Garza. On February 26, 2015, Garza inspected Garcia's house and prepared an estimate of damage, which concluded the $902.37 loss did not exceed Garcia's $1,760.00 deductible. On March 2, 2015, State Farm advised Garcia that no payment would be made to her.

On April 8, 2015, Garcia sued appellees, alleging breach of contract, breach of duty of good faith and fair dealing, as well as violations of the Texas Prompt Payment of Claims Act, the Insurance Code, and the DTPA. Thereafter, State Farm demanded the appraisal process provided in the insurance policy and appointed Lee Moynahan as its appraiser. Garcia responded and appointed Jamie Wesselski as her appraiser. Litigation was stayed pending the appraisal. On September 23, 2015, the appraisers signed an agreement estimating an actual cash value of $6,142.92 and a replacement cost value of $7,835.70 for hail damage to the house. The award was subject to the policy's provisions and deductibles. Three business days later, State Farm tendered payment of the award (the replacement cost value, less depreciation and deductible) in the amount of $4,382.92.

On December 11, 2015, State Farm notified Garcia the litigation stay was lifted. Appellees then moved for summary judgment, alleging State Farm's payment of the appraisal award estopped

Garcia from maintaining a breach of contract claim and, without a contract claim, she could not maintain her extra-contractual claims.

On January 27, 2016, Garcia's attorney notified State Farm's attorney that Garcia was rejecting State Farm's offer to pay $4,382.92. On February 25, 2016, Garcia filed an amended petition, in which she added a request that the appraisal award be set aside and disregarded. Garcia also filed a response to appellees' motion for summary judgment. Appellees filed a reply in support of their motion for summary judgment responding to Garcia's claim that the appraisal award should be set aside and disregarded. On March 10, 2016, the trial court rendered summary judgment in favor of appellees.

## WAS SUMMARY JUDGMENT RENDERED ON GROUNDS NOT ADDRESSED IN THE MOTION FOR SUMMARY JUDGMENT?

In their answer to Garcia's petition, appellees pled the affirmative defense of estoppel, asserting Garcia's breach of contract claim, extra-contractual claims, and any claims under the Prompt Payment of Claims Act were all barred by State Farm's payment of the appraisal award. In the motion for summary judgment, appellees asserted that payment of the appraisal award resolved and disposed of all claims in the lawsuit.

In her first issue on appeal, Garcia asserts the trial court erred when it rendered summary judgment on her claim to set aside and disregard the appraisal award because appellees' motion for summary judgment did not address that claim and appellees did not file an amended or supplemental motion for summary judgment after she filed her amended petition raising that claim. Garcia also asserts the trial court could not consider appellees' reply in support of their motion for summary judgment in ruling on the motion. Appellees counter that their motion for summary judgment was broad enough to encompass Garcia's amended petition because the validity of the

appraisal award was central to their motion for summary judgment; therefore, the trial court did not err in rendering summary judgment on all of Garcia's claims.

A trial court may grant a party summary judgment only on a ground raised in that party's motion. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Although a trial court generally commits reversible error by granting summary judgment on a ground or claim not addressed in the motion, such error is rendered harmless if "the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297-98 (Tex. 2011). Similarly, when a summary judgment movant fails to amend its motion after an amended or supplemental petition, we may affirm the summary judgment if (1) the amended or supplemental petition essentially reiterates previously pleaded causes of action, (2) a ground asserted in the motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims, or (3) the original motion is broad enough to encompass the newly asserted claims. *Callahan v. Vitesse Aviation Serv., LLC*, 397 S.W.3d 342, 350 (Tex. App.—Dallas 2013, no pet.); *Coterill–Jenkins v. Texas Med. Ass'n Health Care Liability Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). To determine whether appellees' motion for summary judgment was broad enough to encompass Garcia's claim that the appraisal award should be set aside, we examine the parties' respective burdens of proof.

"We review a trial court's grant of summary judgment *de novo*." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Estoppel is an affirmative defense. TEX. R. CIV. P. 94. A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). A defendant who conclusively establishes an affirmative defense is entitled to summary judgment. *Fernandez*, 315 S.W.3d at 508. "When reviewing a summary judgment, we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable

inference and resolve any doubts in the nonmovant's favor." *Diversicare Gen. Partner*, 185 S.W.3d at 846. Once the movant has established a right to summary judgment, the nonmovant must expressly present any reasons seeking to avoid the movant's entitlement and must support the reasons with summary judgment proof to establish a fact issue. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If the nonmovant does not raise a fact issue as to every element of the estoppel defense, summary judgment is proper. *See Toonen v. United Serv. Auto. Ass'n*, 935 S.W.2d 937, 940 (Tex. App.—San Antonio 1996, no writ) ("As a general rule, a party seeking to avoid a summary judgment by virtue of an affirmative defense bears the burden of raising a material issue of fact on that defense.").

In this case, appellees bore the initial summary judgment burden on their estoppel defense to conclusively establish that all of Garcia's claims were barred by the payment of the appraisal award. If they satisfied that burden, the burden shifted to Garcia to raise a fact issue on whether the appraisal award should be set aside. *See Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App.—Fort Worth 1992, writ dism'd by agr.) (burden of proof on party seeking to avoid award). In her response to appellees' motion for summary judgment, Garcia argued genuine issues of material fact existed as to whether the appraisal award should be set aside. Therefore, whether she raised this argument in her amended petition or in her response to appellees' motion for summary judgment, the issue of whether the appraisal award should be set aside was encompassed within appellees' motion for summary judgment.

## APPELLEES' ENTITLEMENT TO SUMMARY JUDGMENT ON THEIR ESTOPPEL DEFENSE TO GARCIA'S BREACH OF CONTRACT CLAIM

Appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ). The effect of an appraisal provision is to estop one party

from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.). An appraisal award made pursuant to an insurance policy is binding and enforceable unless the insured proves that the award should be set aside. *Toonen*, 935 S.W.2d at 940.

Here, the parties do not dispute the contractual validity of the appraisal clause contained in the insurance policy as a manner of resolving a dispute as to the amount of Garcia's loss. There also is no dispute (1) Garcia's claim was appraised pursuant to the appraisal clause, (2) the two appraisers agreed on the amount of the loss and they both signed the "Insurance Appraisal Award Agreement," and (3) State Farm tendered the award amount to Garcia. Accordingly, appellees were entitled to summary judgment in their favor on their estoppel defense to Garcia's breach of contract claim unless Garcia raised an issue of fact as to a ground for setting aside the appraisal award or that appellees' estoppel defense fails because she rejected payment of the award. *See id.* (holding, USAA's motion and supporting proof were legally sufficient to establish (1) insured's claim had been appraised pursuant to the policy, and (2) USAA had tendered the amount awarded by the appraisers; accordingly, USAA was entitled to summary judgment in its favor on insured's breach of contract claim unless insured raised a fact issue on ground for setting aside the appraisal award); *see also Cantu v. S. Ins. Co.*, 03-14-00533-CV, 2015 WL 5096858, at *4 (Tex. App.—Austin Aug. 25, 2015, no pet.) ("Southern offered as summary judgment evidence the appraisal award signed by the umpire and one appraiser. Thus, Southern met its summary judgment burden to establish that the appraisal was valid and binding, and the burden shifted to [the insured] to create a fact issue as to one of the three grounds for setting aside an appraisal award.").

Because every reasonable presumption will be indulged to sustain an appraisal award, the burden of proof is on the party seeking to avoid the award. *Barnes*, 844 S.W.2d at 267. However,

although every reasonable presumption will typically be made in favor of an appraisal award, when reviewing a summary judgment, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of a summary judgment non-movant. *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied); *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 798 (Tex. App.—Amarillo 1995, writ denied). Therefore, although Garcia had the burden to raise a fact issue on setting aside the appraisal award, we are required to view the summary judgment proof in the light most favorable to Garcia, as the non-movant, and to resolve against appellees any doubt as to the existence of a genuine issue of material fact on their estoppel defense. *Mays v. Foremost Ins. Co.*, 627 S.W.2d 230, 233-34 (Tex. App.—San Antonio 1981, no writ).

## A.    Should the Award Be Set Aside?

Texas courts recognize three grounds on which the results of an otherwise binding appraisal may be set aside: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy. *Wells*, 919 S.W.2d at 683; *Providence Lloyds Ins. Co.*, 877 S.W.2d at 875-76. Garcia argues the award should be set aside based only on the first and second grounds.

### 1. Was the award made without authority?

Garcia's public adjuster estimated costs to repair, among other items, one turtle-type roof vent, the interior kitchen ceiling, and the dining room ceiling. State Farm and its adjustor (Garza) estimated costs to repair these same items, but for a lesser amount. Therefore, Garcia contends the parties had a dispute regarding the amounts necessary to repair these items, not whether the items were part of the covered loss. However, during the appraisal, the appraisers did not include these items in their appraisal estimate. Garcia argues that because her adjuster and State Farm's adjuster had already determined these items were covered, the appraisers had no authority to

determine the items were not covered and exclude them from the appraisal award. Garcia contends her and State Farm's prior damage estimates are relevant to the existence of a fact issue on whether the appraisers exceeded their authority because the differences between the pre-appraisal damage estimates and the appraisal award indicate the appraisers exceeded their authority. State Farm counters that Garcia is merely speculating that because the appraisal award's scope differs in some way from the pre-appraisal estimates, the appraisal award does not reflect the appraisers' intent.

An appraisal "binds the parties to have the extent or amount of the loss determined in a particular way." *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888). Appraisers have no authority to determine questions of causation, coverage, or liability. *Wells*, 919 S.W.2d at 684. "[T]he function of the appraisers is to determine the amount of damage resulting to the property submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy." *Id.* at 685. "The principle in *Wells* was that the appraisers have certain powers and that, acting within those powers, their determination 'can estop one party . . . from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court.'" *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 902 (Tex. App.—Dallas 2006) (quoting *Wells*), *aff'd*, 290 S.W.3d 886 (Tex. 2009). "Actions beyond those powers are not given estoppel effect." *Id.*

However, whether causation is a liability question or a damages question depends on the circumstances. For example, "when different causes are alleged for a single injury to property, causation is a liability question for the courts." *State Farm v. Johnson*, 290 S.W.3d 886, 892 (Tex. 2009). "Appraisers can decide the cost of repairs in this context, but if they can also decide causation there would be no liability questions left for the courts." *Id.* "By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* In this context, courts can decide

whether a particular type of damage is covered, "but if [the courts] can also decide the amount of damage caused by each, there would be no damage questions left for the appraisers." *Id.*

> The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition. Wear and tear is excluded in most property policies . . . because it occurs in every case. If . . . appraisers can never allocate damages between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction [courts] must avoid.

*Id.* at 892-93 (footnotes omitted).

Distinguishing between causation as a damages question and causation as a liability question is complicated by the practical reality that

> [a]ppraisers must always consider causation, at least as an initial matter. An appraisal is for damages caused by a specific occurrence, not every repair a home might need. When asked to assess hail damage, appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen. . . . Any appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else.

*Id.* at 893. Ultimately, "whether the appraisers have gone beyond the damage questions entrusted to them will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Id.*

The appraisal clause in this case allowed Garcia and State Farm to each "select a competent, disinterested appraiser." The clause further provided as follows:

> The two appraisers shall then select a competent, impartial umpire. . . . The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to [State Farm], the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss.

Garcia and State Farm each selected an appraiser. The two appraisers agreed on the amount of the loss; therefore, an umpire was not necessary. Both appraisers signed the "Insurance Appraisal Award Agreement." Nothing in the appraisal clause specifies the manner in which the

appraisers were to determine the amount of the loss, nor were they required to rely on—or even refer to—any prior damage estimates. Instead, the appraisers were required only to be "disinterested" and "set the amount of the loss." The appraisal award states:

> We, the undersigned [both appraisers], do solemnly swear that we have acted with strict impartiality in making an appraisement of the actual cash value and the amount of loss upon the property hereinbefore mentioned, in accordance with the appointment, and that we have made a true, just and conscientious award of the same, according to the best of our knowledge, skill and judgment. We are not related to the insured, either as creditors or otherwise, and are not interested in said property or the insurance thereon.

In an unpublished opinion cited by State Farm, a federal district court addressed whether an appraisal panel was required to consider earlier damage estimates. In *Gronik v. Chubb Indemnity Insurance Co.*, Nos. 10-cv-0954, 11-cv-697, 2015 WL 7430026, at *2 (E.D. Wis. Nov. 20, 2015), a dispute over which line items of the appraisal award were still in dispute and should be presented at trial arose because, before the appraisal process was completed, the insurance company made a series of payments to the insureds, which they accepted, for structural damage to the property. The insurance company made these payments based on estimates from Belfor, a property restoration company, and the process Belfor used in assessing damage was different from the process the appraisers used. Thus, when the appraisal was complete and confirmed, it proved impossible for the parties to line up the pre-payments with specific line items listed in the appraisal. Subsequently, the insurance company went through the appraisal line items and concluded that a total of $661,383.61 of the line item damages from Part 1 of the award was covered under the policy. Because the insurance company had already issued several pre-payments for property damage totaling $481,880.70, it paid the insureds the balance—$179,502.91—and provided them with a list of appraisal items it felt were not covered and therefore still at issue in the case.

The insured argued the line items the insurance company agreed were covered were still at issue in the case because the insurance company could not prove the pre-payments it issued before

the appraisal were issued for specific line items of damage listed in the appraisal. The district

court disagreed, stating:

> As noted above, the appraisal award set the total amount of loss to the property. Thus, [the insurance company] is not obligated to pay more than what the appraisal awarded, including any pre-payments it made. Once the appraisal was confirmed, any previous estimates from Belfor or anyone else became meaningless, and the only damages estimate that mattered was the appraisal award.
>
> . . .
>
> It does not matter that it could not line up Belfor's estimate process with the appraisal award because once the appraisal award was confirmed, Belfor's estimates no longer mattered. [The insurance company] correctly reassessed its coverage opinion under the now-governing appraisal award, and it reallocated its pre-payments to line up with this award.

*Id.*

The holding in *Gronik* is consistent with the holding in *Providence Lloyds Insurance Co.*,

wherein a panel of this court considered the appellee's argument that the appraisal award was not

made in substantial compliance with the appraisal provisions because the umpire exercised

independent judgment with regard to five items, instead of simply agreeing with one appraiser or

the other as to those items. 877 S.W.2d at 876. This court stated

> The duty of the umpire under the terms of the insurance policy was to ascertain and determine, in the exercise of his own best judgment, the cash value of the items of property about which the appraisers had disagreed, independent of the findings of the appraisers, or either of them. This is what the umpire did, according to the record, and both appraisers agreed with his findings and signed the award, which included their agreed findings.
>
> . . .
>
> [W]e find that in acting independently as to the disputed values, the umpire did not exceed the authority conferred upon him. On the contrary, it was the duty of the umpire under the terms of the contract of insurance to ascertain and determine, in the exercise of his own judgment and as the result of his own investigation, the cost values of the disputed items, independent of the findings of the appraisers, or either of them.

*Id.* at 877-78.

We hold that, under *Gronik* and *Providence Lloyds Insurance Co.*, the damage estimates prepared by Garcia's adjuster and by State Farm's adjuster no longer mattered once the appraisal process was complete. The only obligation imposed on the appraisers in this case was to be "disinterested," and the only obligation imposed on an umpire was to be "impartial." Also, there is no summary judgment evidence establishing the appraisers determined the omitted items were not damaged by hail. Instead, they simply omitted certain items from the appraisal award, and Garcia provided no summary judgment evidence regarding why both appraisers decided to omit the items. *See Johnson*, 290 S.W.3d at 892-94 (appraisers do not exceed their authority when they consider whether the damage was caused by a particular event or was instead the result of non-covered pre-existing perils like wear and tear); *see also TMM Inv., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 475 (5th Cir. 2013) ("To the extent the appraisers merely distinguished damage caused by pre-existing conditions from damage caused by the storm, they were acting within their authority."). The fact that the appraisers' findings differed from the findings of Garcia's and State Farm's adjustors is not evidence—standing alone—that the appraisers acted outside the scope of their authority. Therefore, we conclude Garcia did not carry her burden to raise a fact issue on whether the appraisers exceeded their authority.

### 2. Was the award made as a result of fraud, accident, or mistake?

In her response to appellees' motion for summary judgment and on appeal, Garcia does not distinguish between fraud, accident, or mistake. Instead, she broadly alleges the evidence regarding the appraisers' omission of damage items that were part of the prior damage estimates may be construed to show such omissions were due to fraud, accident, or mistake. Because Garcia did not specifically argue fraud and submitted no evidence in support of any claim that the appraisers' actions were fraudulent, we conclude she did not carry her burden to raise a fact issue on that ground. Regarding accident or mistake, in her brief on appeal, Garcia complains about the

"omission" of various items[1] from the appraisal award and she contends the award was "flawed and does not provide a correct appraisement of the full amount of loss." We interpret this as an argument that the appraisal award should be set aside due to accident or mistake.

"A court may set aside an award on the ground of mistake [or accident] only 'upon a showing that the award does not speak the intention of the appraisers.'" *MLCSV10 v. Stateside Enter., Inc.*, 866 F. Supp. 2d 691, 702 (S.D. Tex. 2012) (quoting *Providence Washington Ins. Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024, 1026 (Tex. Civ. App.—Amarillo 1940, no writ)). "Mistake" in this context has a narrowly defined meaning: an actionable "mistake" is one that caused an award to operate in a way the appraisers did not intend. *Providence Washington Ins.*, 141 S.W.2d at 1026-27 (trial court's judgment setting aside an award by two appraisers and an umpire reversed and rendered because there was no mistake—the award was the intended result); *see also Continental Ins. Co. of N.Y. v. Guerson*, 93 S.W.2d 591, 594 (Tex. Civ. App.—San Antonio 1936, writ dism'd) ("Any errors of judgment, honestly and fairly exercised, on the part of the [appraisers] in making the award, are matters with which the courts cannot concern themselves; but if the award returned does not embody their real judgment on the matters as submitted for their determination and award, the courts, under proper pleading and proof, can and should grant relief."). The Fort Worth Court of Appeals has defined "mistake" as:

> a situation where the appraisers and umpire were laboring under a mistake of fact by which their appraisal award was made to operate in a way they did not intend, such that the award does not speak the intention of the appraisers and umpire, or where the error resulting in the award is so great as to be indicative of gross partiality, undue influence, or corruption.

*Barnes*, 844 S.W.2d at 268 (quoting district court's jury instruction).

---

[1] In addition to the turtle vent, kitchen ceiling, and dining room ceiling, Garcia contends the appraisers did not include labor minimums, which her adjuster and State Farm's adjuster had included in their damage estimates.

In *MLCSV10*, the court considered whether the appraisal award was the result of fraud, mistake, or accident. The insured's appraiser (Haden) refused to sign the appraisal award, in part, because he disagreed with the appraised amounts for repairing various items. 866 F. Supp. 2d at 697. Haden testified he disputed the umpire's incorporation of the insurance company's appraiser's (Lochridge) estimates rather than Haden's to arrive at the appraisal amounts for these categories of damage. One reason for Haden's disagreement was that he had submitted various contractors' reports to support his numbers and Lochridge had not. *Id.*

On appeal, the court determined the insured provided no evidence that the appraisal award did not reflect the umpire's intent. *Id.* at 702. "To the contrary, the record is clear that, for certain damages, [the umpire] decided to use Lochridge's estimates over Haden's. An umpire must often choose between two competing values. [The umpire's] decision to use Lochridge's estimates rather than Haden's does not mean that the appraisal award resulted from accident or mistake." *Id.* The court also concluded there was no evidence anyone lied to the appraisers or to the umpire during the appraisal process, or that the appraisal panel was confused as to what damage the property sustained as a result of the hurricane and vandalism. *Id.*

Here, Garcia's summary judgment evidence includes the original damage estimates provided by the parties' adjusters, both of which included estimated costs to repair certain items, albeit for different amounts. However, the appraisers did not include some of these items in their appraisal award. Other than the prior damage estimates, Garcia provided no other summary judgment evidence; for example, an affidavit from either appraiser.[2] Garcia also did not allege the error resulting in the award is so great as to be indicative of gross partiality, undue influence, or

---

[2] In *Scalise v. Allstate Texas Lloyds*, No. 7:13-CV-178, 2014 WL 1401679, *3 (S.D. Tex. April 10, 2014), the court determined it could not discern from the appraiser estimates and award whether either appraiser impermissibly refused to inspect or consider the damages asserted by the insured.

corruption. Thus, we conclude Garcia did not raise a fact issue on whether the appraisers "were laboring under a mistake of fact by which their appraisal award was made to operate in a way they did not intend, such that the award does not speak the intention of the appraisers." *Barnes*, 844 S.W.2d at 268.

**B. Effect of Garcia's Rejection of the Appraisal Award**

On appeal, Garcia argues appellees failed to conclusively establish their estoppel defense, in part, because they cannot show she accepted payment of the appraisal award because her attorney sent a letter to State Farm formally rejecting its offer to pay $4,382.92 as the proper appraisal award amount. Garcia's letter stated, in pertinent part, as follows:

> Plaintiff rejects such payment because appraisal only sets the amount of loss and leaves questions of liability to be decided by the court. Thus, unless Defendants admit their liability, Plaintiff has the right to have a jury decide the questions of liability in this case on the merits. Moreover, the appraisal award set the amount of loss at $7,835.70 on a replacement cost basis, and Plaintiff should have originally received that amount, minus the applicable deductible, without incurring the delay and expense of litigation and appraisal.

> Therefore, we will continue to pursue discovery and judgment to recover the full amount of actual damages, additional treble damages, exemplary damages, attorneys' fees, and costs to which Plaintiff is entitled on all her contractual and extra-contractual claims.

Garcia contends that, in viewing the evidence in the light most favorable to her as the non-movant, this court may infer she did not voluntarily accept the tendered amount with full knowledge of all material facts and as a full and final release.

Appellees rely on several cases for their argument that their estoppel defense is not defeated by Garcia's rejection of the appraisal award on the ground that if an appraisal award has been reached in accordance with the terms of the insurance policy and the insurer has timely tendered the full amount awarded by the appraisers, that conduct is legally sufficient to entitle the insurer to summary judgment on the breach-of-contract claim against it. *See, e.g., United Neurology, P.A.*

*v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 619-20 (S.D. Tex. 2015) (finding that United Neurology and Hartford were in substantial compliance with the appraisal award clause in the policy, that the award was binding and enforceable, and despite United Neurology's refusal to accept the payment tendered, it failed to show that Hartford breached the contract), *aff'd*, 624 Fed. Appx. 225 (5th Cir. 2015); *Brownlow v. United Serv. Auto. Ass'n*, No. 13-03-758-CV, 2005 WL 608252, at \*2 (Tex. App.—Corpus Christi Mar. 17, 2005, pet. denied) (insured claimed breach of contract because USAA did not pay the full value of a plumbing re-route job; court held, "USAA participated in the appraisal process and tendered the amount awarded by the umpire. Because USAA complied with the requirements of the contract it cannot be found in breach."); *Caso v. Allstate Texas Lloyds*, Civ. A. No. 7:12-CV-478, 2014 WL 528192, at \*5 (S.D. Tex. Feb. 7, 2014) (insured returned tendered award; court held, "the award remains both binding and enforceable until it is set aside, notwithstanding Plaintiffs' rejection of Allstate's tender, an apparently-baseless rejection for which Plaintiffs have not offered an explanation."); *Devonshire Real Estate & Asset Mgmt., LP v. American Ins. Co.*, 3:12-CV-2199-B, 2014 WL 4796967, \*18 (N.D. Tex. Sept. 26, 2014) ("[S]o long as there is a binding and enforceable appraisal award and the insurer timely and full[ly] pays the resulting award, estoppel should apply regardless of whether the insured actually accepts payment.").

Garcia, on the other hand, relies on other cases for her argument that an insured is not estopped from pursuing a breach of contract claim unless she accepts payment of the appraisal award as a full and final release. *See, e.g., Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, CIV.A. H-09-3479, 2011 WL 819491, at \*3 (S.D. Tex. Mar. 2, 2011) ("A plaintiff, however, is estopped from pursuing a breach of contract claim not by the issuance of the appraisal award. Instead, the plaintiff is estopped only where, as here, the plaintiff **accepts payment** of the appraisal amount from the insurer.") (emphasis in original), *aff'd*, 459 Fed. Appx. 366 (5th Cir.

2012); *see also Church on the Rock N. v. Church Mut. Ins., Co.*, 3:10-CV-0975-L, 2013 WL 497879, at *9 (N.D. Tex. Feb. 11, 2013) (citing to *Blum's Furniture* and concluding a genuine dispute of material fact existed as to whether the insured accepted the insurance company's post-appraisal payments with understanding it would be bound by the award and barred from pursuing claims against the insurance company for additional damages).

But the cases on which Garcia relies are distinguishable on their facts. In *Blum's Furniture*, there was no dispute that the insured accepted the appraisal award payment from the insurance company; therefore, its holding may be dicta. In *Church on the Rock North*, the court held the insurer could not establish its entitlement to estoppel as a matter of law because, based on the evidence presented in that case, (1) the insurer failed to establish the appraisal award was binding and enforceable against the insured, (2) a genuine dispute of material fact existed on whether the insurer's payments of the appraisal award were timely, and (3) a genuine dispute of material fact existed as to whether the insured accepted the insurer's post-appraisal payments with the understanding that it would be bound by the award and barred from pursuing claims against the insurer for additional damages. 2013 WL 497879, at *9. Also, *Church on the Rock North's* requirement of acceptance for estoppel effectiveness was due, in part, to retention-of-rights language in the appraisal clause.[3]

There is a strong public policy favoring enforcement of appraisal clauses and every reasonable presumption is indulged to sustain an award. *United Neurology*, 101 F. Supp. 3d at

---

[3] The appraisal clause in *Church on the Rock North* contained the following provision: "If there is an appraisal: a. **You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Condition**; and b. We will still retain our right to deny the claim." 2013 WL 497879, at *7 (emphasis added in original). Also, the court noted the two Acknowledgments signed by the insured upon receipt of the insurance company's post-appraisal payments undermined the company's argument that the appraisal award and its post-appraisal payments estopped the insured from seeking additional damages based on breach of contract and extra-contractual theories. The acknowledgement stated, in part: "The receipt of payment on this claim by [insured] shall not be construed as a full and final release of all claims against [insurance company] . . . ." *Id.* at *7-8.

595; *see also Johnson*, 290 S.W.3d at 895 ("But in every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay. An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.' Like any other contractual provision, appraisal clauses should be enforced."). The purpose of an appraisal clause is to provide a binding, extra-judicial remedy for any disagreement regarding the amount of the loss. *Amine v. Liberty Lloyds of Texas Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, at *3 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.).

Here, the insurance policy clearly specified an appraisal process was the remedy for any disagreement regarding the amount of loss, and that the decision reached by the appraisers and umpire "will set the amount of the loss" and "shall be the amount of the loss." Garcia chose to take advantage of the insurance policy's contractual, extra-judicial means of resolving the amount of loss; State Farm and Garcia participated in the appraisal process; and State Farm fully paid the amount of loss set by the appraisers. On this record, we conclude Garcia cannot defeat an otherwise valid and binding appraisal award simply by rejecting State Farm's payment of the award.

## FACT QUESTION ON BREACH OF CONTRACT CLAIM

Garcia argues that, even if the appraisal award is binding and enforceable, summary judgment in favor of appellees should still be reversed because there are genuine issues of material fact on whether State Farm breached the insurance contract. Garcia attempts to create a fact issue by arguing the summary judgment evidence shows State Farm failed to pay for all the hail-related damage to her house, including roof shingles, exterior wood fascia, window screens, and amounts for contractor overhead and profit. According to Garcia, State Farm denied coverage for these items, which the appraisers later included in their appraisal award. Garcia asserts this amounts to

evidence that State Farm breached the insurance contract by wrongfully denying coverage. This argument has been rejected by numerous courts.

"Texas law clearly holds the discrepancy between the initial estimate and the appraisal award cannot be used as evidence of breach of contract." *Gabriel v. Allstate Texas Lloyds*, No. 7:13-CV-181, 2013 WL 7885700, at *3 (S.D. Tex. Nov. 1, 2013). In *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi-Edinburg 2004, pet. denied), the insureds argued that because the appraisal award was greater than the initial payment made by State Farm, State Farm was in breach of the contract as a matter of law. The court held:

> [Plaintiffs] overstate the effect of appraisal decisions: an appraisal decision is intended "to estop one party from contesting the issue of the value of damages in a suit on the insurance contract," . . . not to facilitate this type of liability. [Plaintiffs] may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal.

*Id.* (citation omitted).

The reason for this defense is to prevent the insured from taking advantage of the binding appraisal process to determine the value of its claim and then, after the insurer fully pays the appraisal award, suing the insurer for its initial failure to pay. *See id.* The defense applies with special force where, as here, "the contract [the insured] claim[s] is being breached provides for resolution of disputes through appraisal." *Id.*

Here, the language of the appraisal clause, as in *Breshears* and *Gabriel*, describes disagreement as to the amount of loss as a condition precedent to the appraisal process,[4] rendering the asserted discrepancy an immaterial fact issue for a breach of contract claim. *See also Anderson v. Am. Risk Ins. Co., Inc.*, 01-15-00257-CV, 2016 WL 3438243, at *5 (Tex. App.—Houston [1st

---

[4] The appraisal clause in the policy begins: "If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal."

Dist.] June 21, 2016, no pet.) ("The fact that State Farm did not pay the amount of the award earlier, alone, does not raise a fact issue on Anderson's claim for breach of contract."); *Graber v. State Farm Lloyds*, No. 3:13-CV-2671-B, 2015 WL 3755030, at *4 (N.D. Tex. June 15, 2015) (concluding insured "estopped from relying on the appraisal award to demonstrate that [insurer] breached the Policy when it initially issued payment to [insured] for an amount less than the appraisal"); *Scalise*, 2013 WL 6835248, at *5 ("[W]here the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve that dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of contract.").

We hold Garcia failed to raise a fact issue on her breach of contract claim because she cannot use the fact that the appraisal award was different from the original damage estimates as evidence of a breach of contract. Also, Garcia has failed to point to any provision of the insurance policy that was breached by State Farm's purportedly unreasonable investigation or point to any evidence other than the appraisal award to support her claim. *See Graber*, 2015 WL 3755030, at *4 (holding same).

<h2 style="text-align:center">GARCIA'S PROMPT PAYMENT CLAIM</h2>

Garcia asserted a claim under Texas Insurance Code Chapter 542, the Prompt Payment of Claims Act. The Act provides that an insurer shall pay damages, with interest, and attorney's fees if an insurer delays payment of a claim for longer than sixty days. TEX. INS. CODE ANN. § 542.058(a) (West Supp. 2016).[5]

---

[5] "Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058(a). "If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the

In this case, Garcia reported her claim to State Farm on January 22, 2015. On January 24, 2015, Garcia's adjuster sent a notice of representation to State Farm. By letter dated February 17, 2015, Garza wrote to Garcia's adjuster requesting the adjuster's estimates and photographs. Garcia contends State Farm received the requested items on February 18, 2015. State Farm inspected the house on either February 26 or 28, 2015.[6] On March 2, 2015, State Farm sent a denial letter to Garcia.[7] Garcia filed suit on April 8, 2015, and State Farm invoked the appraisal clause on July 21, 2015. State Farm received the itemized appraisal award on September 23, 2015, and paid the award to Garcia on September 28, 2015.

On appeal, Garcia argues that, notwithstanding a valid appraisal award, case law does not support a conclusion that the award precludes statutory interest damages for violations of the Act that occurred before the appraisal was invoked. Garcia asserts that, at best, an appraisal only tolls the accrual of statutory interest damages from the date of the alleged wrongful denial (March 2, 2015) to the date appraisal was invoked (July 21, 2015). State Farm argues it is entitled to judgment as a matter of law on Garcia's prompt payment claim because it is undisputed that it timely paid the appraisal award.

Garcia relies on the opinion in *Graber*, in which the insured alleged State Farm violated the Act by delaying full payment of his claim until twenty-eight months after he submitted the claim. State Farm did not dispute that it did not pay the insured's claim in full until twenty-eight months after the claim was submitted, but argued its full and timely payment of the appraisal award

---

amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees. . . . If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case." *Id.* § 542.060 (West 2009).

[6] State Farm's claim activity file notes indicate the inspection occurred on February 28, but the copy of the estimate sent to Garcia indicates the inspection occurred February 26.

[7] In its letter to Garcia, State Farm agreed there was covered damage caused by the hail, but in an amount less than her deductible.

precluded an award of penalties under the Act as a matter of law. 2015 WL 3755030, at *9. The court concluded State Farm's full and timely payment of the appraisal award did not preclude the insured's claim for statutory interest under the Act. *Id.* at *10. The court reached this conclusion after determining State Farm's defense was without basis in the text of the Act or the Texas Supreme Court and Fifth Circuit decisions construing the Act. *Graber* relied on *Higginbotham v. State Farm Mutual Automobile Insurance Co.*, 103 F.3d 456, 461 (5th Cir. 1997), which held that an insurer's wrongful rejection of a claim may be considered a delay in payment for purposes of the Act's sixty-day rule and statutory damages, even if the insurer's denial was made in good faith. The Texas Supreme Court case on which *Graber* relied, *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427-28 (Tex. 2004), held insurers who partially pay claims are liable for penalty interest on the unpaid portions of those claims until they are fully paid.

But, neither *Higginbotham* nor *Mex-Tex* were appraisal cases. And, in *Higginbotham*, the insurer was found liable on the breach of contract claim. After noting "there may be no liability for statutory damages if it is subsequently determined, by litigation, that the claim in question is invalid and not payable" the court held that "State Farm took a risk when it chose to reject Higginbotham's claim. State Farm lost when it was found liable for breach of contract. Therefore, it must pay this 18 percent per annum interest and reasonable attorneys' fees." *Higginbotham*, 103 F.3d at 461.

Contrary to the authorities on which Garcia's relies, a long line of cases has held that full and timely payment of an appraisal award under the policy precludes an insured from recovering penalties under the Act as a matter of law. *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563-64 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (citing Texas cases) (noting Insurance Code does not expressly provide deadline for completion of appraisal process and that "Texas courts considering the issue have concluded that full and timely payment of an appraisal

award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."); *see also Waterhill Cos. Ltd. v. Great Am. Assur. Co.*, No. Civ. A. H-05-4080, 2006 WL 696577, at *3 (S.D. Tex. Mar.16, 2006); *Breshear*s, 155 S.W.3d 345; *Anderson*, 2016 WL 3438243, at *5; *Bernstien v. Safeco Ins. Co. of Illinois*, 05-13-01533-CV, 2015 WL 3958282, at *1 (Tex. App.—Dallas June 30, 2015, no pet.); *Amine*, 2007 WL 2264477, at *4-5. In *Scalise*, the court

> recognize[d] that where an insurer breaches its contract with the insured by underpaying a covered claim, it can be held liable for penalties calculated on the difference between the amount initially tendered and the amount owed, from the time it should have been paid until judgment. *Republic Underwriters Ins. Co. v. Mex–Tex*, 150 S.W.3d 423, 427-28 (Tex. 2004). However, *Mex-Tex* was not an appraisal case, and more relevant authority directs that an insurer commits no prompt payment violation when it submits to the delay inherent in the contractual appraisal process (in this case, invoked by the insured) before paying all covered damages determined by that process.

2013 WL 6835248, at *6.

We hold that because it is undisputed State Farm paid the appraisal award, Garcia cannot sustain her late payment claim.

## OTHER EXTRA-CONTRACTUAL CLAIMS

Garcia also asserted claims for violations of the DTPA, unfair insurance practices, and common law breach of duty of good faith and fair dealing. Garcia asserted appellees violated the DTPA by (1) their unreasonable delays in the investigation, adjustment, and resolution of her claim; failing to give her "the benefit of the doubt" and failing to pay for the proper repair to her house; (2) misrepresenting the insurance policy and its benefits; (3) breaching an express warranty that the damage caused by the hail storm would be covered; and (4) taking advantage of her lack of knowledge, ability, and experience. As unfair insurance practices, Garcia alleged the same actions, as well as a laundry-list of other violations. Under her breach of duty of good faith and fair dealing, Garcia again alleged the same actions, as well as that State Farm unreasonably delayed

payment or settlement of her entire claim. In their motion for summary judgment, appellees argued they were entitled to summary judgment as a matter of law on Garcia's extra-contractual claims because (1) State Farm promptly investigated Garcia's claim after she reported it, participated in the appraisal process, and timely tendered payment of the appraisal award; and (2) Garcia did not allege any facts giving rise to an independent injury claim.

In her final issue on appeal, Garcia asserts a fact issue remains on her extra-contractual claims because appellees failed to show that State Farm's payment of the appraisal award precluded liability on these claims. Garcia argues that even without an independent injury or even if the insurer complied with the policy, an insurer is liable to pay the full amount owed for a covered loss as damages on an extra-contractual claim.

### 1. Common law bad faith claim

Under Texas law, "[a]n insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). An insurer breaches this duty of good faith and fair dealing "if the insurer knew or should have known that it was reasonably clear that the claim was covered," but denies or unreasonably delays payment of the claim. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55-56 (Tex.1997).

However, insurance coverage claims and bad faith claims are by their nature independent. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). In most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract. *Id.*; *Stoker*, 903 S.W.2d at 341; *Toonen*, 935 S.W.2d at 941-42; *Lundstrom*, 192 S.W.3d at 96 (holding there can be no claim for bad faith when insurer denies claim that is not covered and has not otherwise breached contract). The threshold of bad faith is reached when a breach of contract is accompanied by an independent tort. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994), *superseded by statute on other grounds*, Act of June 2, 2003, 78th Leg., R.S., ch. 204,

§ 13.02, 2003 Tex. Gen. Laws 847, 887).  Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith.  *Id.*; *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *Laird v. CMI Lloyds*, 261 S.W.3d 322, 328 (Tex. App.—Texarkana 2008, pet. dism'd w.o.j.).  Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy.  *Moriel*, 879 S.W.2d at 18. A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith.  *Id.*  An insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact. *Id.*

Here, State Farm agreed there was covered damage caused by hail, but in an amount that was less than Garcia's deductible.  Therefore, State Farm did not pay her.  State Farm also stated its adjuster observed additional damage not caused by wind and hail and denied "coverage for damage to shingles and other exterior roofing components, except those damages identified in [its] estimate . . . ."  About one month after receiving this notice from State Farm, Garcia filed suit. State Farm then invoked the appraisal clause in the insurance policy.  State Farm argues its payment of all covered damages pursuant to the appraisal award extinguished any breach of contract claim arising from the dispute; therefore, it is entitled to summary judgment on Garcia's extra-contractual claims in the absence of an independent injury.  But, payment of an appraisal award does not necessarily bar Garcia's extra-contractual claims for pre-appraisal conduct.  The Texas Supreme Court has "left open the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim."  *Progressive Cty Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam); *see also Stoker*, 903 S.W.2d at 341 ("We do not

exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim."). Thus, in order to avoid summary judgment on her common law bad faith claim, Garcia had the burden to raise a genuine issue of material fact that appellees "commit[ed] some act, so extreme, that would cause injury independent of the policy claim" or failed to timely investigate her claim. *See Stoker*, 903 S.W.2d at 341.

In her response to appellees' motion for summary judgment and on appeal, Garcia does not point to an independent tort. Instead, she relies on two cases for her argument that an independent injury is not required in her case. The first case on which Garcia relies is *United National Insurance Co. v. AMJ Investments, LLC*, in which the court held that an insurer's "unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." 447 S.W.3d 1, 11 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) (quoting *Vail v. Tex. Farm Bur. Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988)). "If a property insurer fails to pay the full amount of the claim as a result of an unfair claim-settlement practice under the Insurance Code, the insured may elect to recover its damages under either a breach-of-contract or a statutory-violation theory." *Id.*

The second case on which Garcia relies is *USAA Texas Lloyd's Co. v. Menchaca* in which USAA argued that because the jury found no breach of contract, the insured's extra-contractual claims failed as a matter of law. The court noted the general rule that, in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract. 13-13-00046-CV, 2014 WL 3804602, at *8 (Tex. App.—Corpus Christi-Edinburg July 31, 2014, pet. granted). But the court then noted

> USAA has not directed us to any cases, nor can we find any, involving a situation such as this one where (1) the insurer complied with the policy, but (2) nonetheless violated the insurance code, and (3) the insurer would have been contractually

> obligated to pay policy benefits had the insurer complied with the insurance code. Under the unique circumstances presented in this case, USAA did not breach the policy but policy benefits are indeed the correct measure of damages caused by USAA's violation of the insurance code.

*Id.* at \*9.

*AMJ Investments* can be distinguished in that it did not involve an appraisal and the insured pled and proved the insurer breached the insurance contract. *Menchaca* can be distinguished in that it is not an appraisal case. Therefore, we do not find the holdings in these cases helpful.

Although Garcia referred to her bad faith claims in her response to appellees' motion for summary judgment, she produced no summary judgment evidence related to bad faith claims, much less any evidence of "extreme" behavior. Garcia only alleged that coverage and liability on her breach of contract claim remained issues of material fact for the jury to decide; and material issues of fact remained on whether the appraisal award should be set aside.

We conclude Garcia did not present evidence of an act so extreme that it caused injury independent of the policy claim. *See Scalise*, 2013 WL 6835248, at \*7 (finding no independent injury where insured "made only those fairly routine allegations of a substandard (albeit timely) investigation and initial undervaluation of his covered claim, the entirety of which was timely paid upon issuance of the appraisal award"); *see also Mid-Continent Cas. Ins. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521-22 (5th Cir. 2013) (noting that "in seventeen years since [*Stoker*] appeared, no Texas court has yet held that recovery is available for an insurer's extreme act . . . ."). Rather, the summary judgment evidence demonstrates only a bona fide dispute about the amount necessary to compensate Garcia for covered damage to her home. *See Simmons*, 963 S.W.2d at 44 ("Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith."). This bona fide dispute was submitted to the appraisal process for resolution.

**2. Statutory bad faith claims under the Insurance Code and the DTPA**

Under Texas law, an individual damaged by "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance" may bring a cause of action under the Texas Insurance Code. TEX. INS. CODE ANN. § 541.151(1) (West 2009). A violation of Chapter 541 of the Texas Insurance Code is also a violation of the DTPA. TEX. BUS. & COM. CODE ANN. § 17.50(a)(4) (West 2011) ("A consumer may maintain an action where [the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code] constitute[s] a producing cause of economic damages or damages for mental anguish."). An insurer's liability under the Insurance Code and the DTPA incorporate the common-law bad faith standard developed as part of the elements of a claim for breach of the duty of good faith and fair dealing. *See Boyd*, 177 S.W.3d at 922; *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, pet. denied); *Spicewood Summit Office Condo. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex. App.—Austin 2009, pet. denied) ("Absent legally sufficient evidence of bad faith, however, Spicewood's claims under the common law, insurance code chapter 541, and the DTPA are subject to summary judgment."). "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claim." *Anderson*, 2016 WL 3438243, at *7 (quoting *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-CV-471, 2014 WL 3974315, at *8 (E.D. Tex. Aug. 5, 2014)).

Because Garcia's unfair insurance practice claims and her DTPA section 17.50(a)(4) claim arise from the same underlying theory as her common law bad faith claim, we hold that because she failed to present evidence on her breach of common law bad faith claim or of an independent injury, and because State Farm timely paid all covered damages determined by the appraisal award, Garcia's statutory bad faith claims are foreclosed.

## CONCLUSION

For the reasons stated above, we overrule Garcia's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice