# IN THE SUPREME COURT OF TEXAS

══════════
No. 17-0640
══════════

BARBARA TECHNOLOGIES CORPORATION, PETITIONER,

v.

STATE FARM LLOYDS, RESPONDENT

══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
══════════════════════════════════════════

**Argued February 20, 2019**

JUSTICE GREEN delivered the opinion of the Court, in which JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BUSBY joined.

JUSTICE BOYD filed an opinion concurring in part and dissenting in part.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE BROWN and JUSTICE BLACKLOCK joined.

In this case, we consider competing motions for summary judgment that present the issue of whether an insured party can prevail on its claim for damages for delayed payment pursuant to the Texas Prompt Payment of Claims Act (TPPCA), *see* TEX. INS. CODE ch. 542, when it is undisputed that the insurer investigated the claim, rejected it, invoked the policy's provision for an appraisal process, and ultimately paid the insured in full in accordance with the appraisal. We hold that the insurer's payment based on the appraisal was neither an acknowledgment of liability under the policy nor an award of actual damages. Because the insured has not established that it is entitled

to TPPCA prompt pay damages as a matter of law and the insurer likewise has not established that it can owe no TPPCA damages as a matter of law, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Background

Barbara Technologies Corporation contracted with State Farm Lloyds for property insurance covering Barbara Tech's commercial property in San Antonio. The insurance policy covered damage resulting from wind and hail. A wind and hail storm damaged Barbara Tech's property on March 31, 2013. On October 17, 2013, Barbara Tech filed a claim with State Farm pursuant to the insurance policy, requesting coverage of the cost of repairs. State Farm inspected the property about two weeks later. State Farm denied Barbara Tech's claim on November 4, 2013, stating that the property sustained $3,153.57 in damages, which was less than Barbara Tech's $5,000 deductible under the policy. Barbara Tech requested a second inspection on February 21, 2014. State Farm obliged and conducted another inspection on March 4, 2014, finding no additional damage.

Barbara Tech filed suit against State Farm on July 14, 2014, alleging violations of the TPPCA, among other claims. State Farm invoked the appraisal provision under the policy on January 9, 2015.[1] The appraisal provision allowed either party to demand an appraisal of the loss,

---

[1] Section I(1)(b) of the policy provides:

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision

2

in which each party would select its own appraiser, with an umpire to settle any dispute between the appraisers. On August 18, 2015, approximately seven months after invocation of the appraisal provision, the appraisers agreed to an appraisal value of $195,345.63. State Farm received the appraisal award on August 19, 2015, and then paid $178,845.25—the appraisal value less depreciation and the deductible—on August 25, 2015. Barbara Tech received and accepted the payment and amended its petition to include only claims for violations of the TPPCA[2]—specifically, Barbara Tech claimed statutory damages under Texas Insurance Code chapter 542 for State Farm's alleged failure to comply with statutory deadlines for acknowledging receipt of the claim, commencing an investigation of the claim, notifying Barbara Tech of its rejection of the claim, and paying the claim. *See* TEX. INS. CODE §§ 542.055(a)(1)–(3), .056(a), .058(a), .060. Barbara Tech then moved for traditional summary judgment, asserting that, as a matter of law, State Farm violated the TPPCA by failing to pay the claim within the TPPCA's sixty-day time limit and therefore owed TPPCA damages. *Id.* §§ 542.058, .060. State Farm filed a cross-motion for summary judgment, asserting that it did not violate the TPPCA as a matter of law because it timely paid the appraisal award and was not liable under the policy.

The trial court denied Barbara Tech's summary judgment motion and granted summary judgment in favor of State Farm. Barbara Tech appealed, arguing that "its TPPCA claim survived

---

agreed to by any two will be binding. Each party will: (1) Pay its chosen appraiser; and (2) Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, [State Farm] will still retain [its] right to deny the claim.

[2] Although Barbara Tech initially alleged a bad faith claim related to State Farm's failure to investigate the claim properly, Barbara Tech dropped that claim after State Farm's payment based on the appraisal. Barbara Tech likewise dropped its breach of contract claim.

State Farm's invocation of the appraisal process and its payment of the appraisal" and that "State Farm is strictly liable for interest and attorneys' fees under chapter 542 because it did not pay the claim within sixty . . . days after it received notice of the loss." State Farm countered that an insurer does not violate the TPPCA when it pays in accordance with an appraisal award. The court of appeals affirmed the trial court's judgment and held that a "plaintiff could not sustain a claim under the TPPCA when it [is] undisputed that the insurer had paid the appraisal award." 566 S.W.3d 294, 296 (Tex. App.—San Antonio 2017, pet. granted) (mem. op.).

Specifically, the court of appeals relied on its own precedent, *Garcia v. State Farm Lloyds*, 514 S.W.3d 257 (Tex. App.—San Antonio 2016, pet. denied), in concluding that a full and timely payment of an appraisal award under the policy precludes an insured from recovering damages under the TPPCA as a matter of law. *See* 566 S.W.3d at 296–97 (citing *Garcia*, 514 S.W.3d at 274–79). The court of appeals reasoned that the facts of this case were indistinguishable from *Garcia* and that "undisputed evidence show[ed] that State Farm invoked the appraisal provision in the policy and timely paid the appraisal award," and therefore the trial court did not err in granting summary judgment in favor of State Farm. *Id.* at 297. Barbara Tech petitioned for review in this Court, and we granted the petition. 62 Tex. Sup. Ct. J. 313 (Jan. 18, 2019).

## II. Appraisal and the TPPCA

Although presented initially through competing motions for summary judgment, the legal issue before this Court is whether an insured's claim for prompt pay damages under the TPPCA survives the insurer's payment in full after the amount of loss was determined through an appraisal process provided for in the parties' insurance policy. The parties ask us to determine whether

4

Barbara Tech is entitled to damages under the TPPCA despite State Farm's use of the appraisal process, and whether State Farm's payment in accordance with the appraisal exempts it from TPPCA damages.

## A. Standard of Review

We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *E.g.*, *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010) (citation omitted); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citation omitted). When both parties move for summary judgment on the same issue, the reviewing court considers the evidence presented by both parties, determining all questions presented. *Dorsett*, 164 S.W.3d at 661 (citation omitted). If we determine that the trial court erred in granting summary judgment, and therefore the court of appeals erred in affirming the trial court's judgment, we render the judgment the trial court should have rendered. *See id.*

## B. State Farm's Motion for Summary Judgment

State Farm moved for traditional summary judgment on two grounds. First, State Farm asserted that Barbara Tech cannot maintain its claim under the TPPCA because State Farm paid timely and in accordance with the appraisal. In other words, citing various courts of appeals cases, State Farm took the position that timely payment of an appraisal award forecloses TPPCA damages as a matter of law. *See, e.g.*, *In re Slavonic Mut. Fire Ins.*, 308 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (citations omitted); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied) (mem. op.).

Second, State Farm argued that it is not liable for Barbara Tech's claim, as it has never accepted liability or been adjudicated liable. And, arguing that it cannot be held liable for breach of contract because Barbara Tech nonsuited that claim, State Farm contends that it is not subject to TPPCA damages as a matter of law. The court of appeals decided the case on the first ground, holding that State Farm was entitled to summary judgment because "a full and timely payment of an appraisal award under the policy precludes an insured from recovering [damages] under the TPPCA as a matter of law." 566 S.W.3d at 296–97.

### 1. Payment of Appraisal Award

We first consider the court of appeals' basis for affirming summary judgment for State Farm—that a plaintiff cannot sustain a claim for prompt pay damages under the TPPCA when it is undisputed that the insurer paid in accordance with the appraisal, in effect paying all benefits to which the plaintiff could be entitled under the policy. *Id.* Because analysis of this issue requires an understanding of the circumstances under which a claimant can sustain a claim for damages under the TPPCA, we begin with a review of the plain language of the TPPCA provisions, as that is the surest indicator of the Legislature's intent. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (recognizing that in interpreting a statute, its plain language is the most reliable guide to the Legislature's intent (citation omitted)); *Molinet v. Kimbrell*, 356 S.W.3d 407, 414–15 (Tex. 2011) ("It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning . . . yielding absurd . . . results." (citations omitted)).

6

### a. The TPPCA

The TPPCA, codified in Texas Insurance Code chapter 542, imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims. TEX. INS. CODE § 542.054 ("This subchapter shall be liberally construed to promote the prompt payment of insurance claims."). Though the TPPCA's purpose relates specifically to prompt *payment* of claims, the TPPCA also contains specific requirements and deadlines for responding to, investigating, and evaluating insurance claims. *See id.* §§ 542.055–.056. Both the payment deadlines and the non-payment deadlines and requirements are enforceable under the TPPCA, and damages can be imposed for any violation. *See id.* §§ 542.058, .060.

> Section 542.055, which governs receipt of notice of a claim, provides:
>
> (a) Not later than the 15th day . . . after the date an insurer receives notice of a claim, the insurer shall:
>> (1) acknowledge receipt of the claim;
>> (2) commence any investigation of the claim; and
>> (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant.
>
> (b) An insurer may make additional requests for information if during the investigation of the claim the additional requests are necessary.

*Id.* § 542.055(a)(1)–(3), (b). Additional TPPCA deadlines are triggered when "the insurer receives all items, statements, and forms required . . . to secure final proof of loss," whether the insurer receives this information in response to its initial request or in response to additional requests. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 28 (Tex. 2007) (emphasis omitted) (citing TEX. INS. CODE § 542.056(a)); *see also* TEX. INS. CODE § 542.056(b). "[A]n insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business

7

day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." TEX. INS. CODE § 542.056(a). If an insurer rejects a claim, its notice must state the insurer's reasons. *Id.* § 542.056(c). "[I]f an insurer notifies a claimant under Section 542.056 that the insurer will pay a claim, . . . the insurer shall pay the claim not later than the fifth business day after the date notice is made." *Id.* § 542.057(a).

As to delayed payment, the Insurance Code provides:

[E]xcept as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by section 542.060.

*Id.* § 542.058(a). Section 542.060 addresses liability for a violation of the TPPCA:

(a) Except as provided by Subsection (c), if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the [insured], . . . in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees . . . .

*Id.* § 542.060(a).

Taken together, the TPPCA imposes several key requirements on insurers: (1) the insurer must acknowledge receipt of the claim, commence any investigation of the claim, and request any items, statements, or forms required from the claimant within fifteen days of its receipt of notice of the claim; (2) the insurer must notify the claimant of acceptance or rejection of the claim no later than fifteen business days after the insurer receives all items, statements, and forms required to secure final proof of loss; (3) if the insurer notifies the insured that it will pay all or part of the claim, it must pay it by the fifth business day after the date of notice of acceptance of the claim; (4) if the

8

insurer delays payment of a claim for more than the applicable statutory period or sixty days, the insurer shall pay TPPCA damages; and (5) an insurer that is liable for a claim under an insurance policy and violates a TPPCA provision is liable for TPPCA damages in the form of 18% interest on the amount of the claim per year, with attorney's fees. *See id.* §§ 542.055(a)(1)–(3), .056(a), .057(a), .058(a), 060(a). Thus, the TPPCA has three main components—non-payment requirements and deadlines, deadlines for paying claims, and enforcement. *See generally id.* §§ 542.055–.060. Only the payment deadline and enforcement provisions are at issue here.

In light of the TPPCA's requirements and deadlines, we must determine whether State Farm's invocation of the policy's appraisal provision and subsequent payment leaves State Farm exposed to liability for prompt pay damages under the TPPCA. In considering this question, we remain mindful of the facts of this case—there is no allegation that State Farm failed to request information, investigate, or evaluate the claim in compliance with the TPPCA; following its receipt of necessary information and its investigation, State Farm acknowledged that the insured's loss was covered but rejected the claim because the amount of loss was less than Barbara Tech's deductible; asked to revisit the decision, State Farm inspected a second time and stood by its rejection; Barbara Tech then sued. More than a year after State Farm first rejected the claim, State Farm exercised its contractual right to demand an appraisal; the appraised value was significantly higher than State Farm's assessment and greatly exceeded Barbara Tech's deductible; State Farm paid in accordance with the appraisal, less depreciation and the deductible; State Farm made that payment four business days after receiving the appraisal.

9

To prevail under a claim for TPPCA damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim.[3] *See id.* § 542.060(a); *Progressive Cty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam); *Allstate Ins. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001); *see also Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins.*, 795 F.3d 496, 505–06 (5th Cir. 2015); *Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*, 602 F. App'x 981, 983–84 (5th Cir. 2015) (per curiam). If the insured fails to establish either that the insurer is liable for the claim or that the insurer failed to comply with a provision of the TPPCA, the insured is not entitled to TPPCA damages. Thus, the basis for liability for TPPCA damages is "that the requisite time has passed and the insurer was ultimately found liable for the claim." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (per curiam).

Nowhere does the TPPCA mention appraisals or how invocation of an appraisal process affects the TPPCA's deadlines and requirements. There is no question, however, that appraisal clauses were in use and enforceable well before enactment of the TPPCA. *See, e.g.*, *Scottish Union & Nat'l Ins. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888) (providing an example of an appraisal clause and enforcing it). And there is no question that the Legislature knows how to fit appraisals into a statutory scheme governing the evaluation and payment of insurance claims, as it did just that in the Texas Windstorm Insurance Association Act. *See* TEX. INS. CODE § 2210.574 (providing that a

_____

[3] In its petition for review, Barbara Tech arguably sought damages for State Farm's alleged failure to comply with section 542.058. We discuss that section below.

10

claimant who disputes the amount of loss may demand an appraisal in accordance with the policy); *id.* § 2210.579 (referencing appraisal in establishing when an insurer is to file suit against a claimant). We must interpret the absence of any such language in chapter 542 to mean that the Legislature intends neither to impose specific deadlines for the contractual appraisal process within the TPPCA scheme nor to exempt the contractual appraisal process from the deadlines provided by the TPPCA. *See Tex. Mut. Ins. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012) ("[T]his Court presumes the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." (citation omitted)); *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the Legislature with complete knowledge of the existing law and with reference to it." (citation omitted)).

### b. The Appraisal Process

Today, appraisal clauses are included in most property insurance policies. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009). Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding) ("Appraisals can provide a less expensive, more efficient alternative to litigation." (citation omitted)). This Court has reasoned that "[l]ike any other contractual provision, appraisal clauses should be enforced." *Johnson*, 290 S.W.3d at 895. "[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay."

11

*Id.* Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim.[4] *Id.* at 888–89.

Barbara Tech's and State Farm's policy contained an appraisal provision, which stated that if either party "disagree[d] on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." In the policy, State Farm expressly retained the right to deny the claim, even after the appraisal process concludes. After Barbara Tech filed suit against State Farm, State Farm invoked this appraisal provision, exercising its right to appraisal.

Under a policy containing no time limitation for exercising the right to the appraisal process, if a party demands the appraisal "within a reasonable time after the parties [reach] an impasse," then invocation of the appraisal process is valid unless waived. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 410 (defining "reaching an impasse" as "a mutual understanding that neither will negotiate further"). We have held that if the insured establishes that it has been prejudiced by the insurer's delay in demanding an appraisal, the insurer may have waived use of the appraisal process, even where the policy contains no time limitation for an appraisal request. *See, e.g.*, *id.* at 411 (explaining that mere delay is insufficient to find waiver and that the insured must show it has been prejudiced to establish waiver of the use of an appraisal (citation omitted)). Barbara Tech did not

---

[4] "Appraisal" is defined as "[t]he determination of what constitutes a fair price for something or how its condition can be fairly stated; the act of assessing the worth, value, or condition of something." *See Appraisal*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Appraisal Clause" is defined as "[a]n insurance-policy provision allowing either the insurer or the insured to demand an independent estimation of a claimed loss." *See Appraisal Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Appraisement" is an "alternative-dispute-resolution method used for resolving the amount or extent of liability on a contract when the issue of liability itself is not in dispute." *See Appraisement*, BLACK'S LAW DICTIONARY (11th ed. 2019).

object to the appraisal request, nor did it complain that State Farm's appraisal demand was untimely and therefore waived.

State Farm received the appraisal award on August 19, 2015, and paid the amount of the appraisal, less depreciation and the deductible, on August 25, 2015—six days (four business days) after receipt.[5] Barbara Tech argues that although State Farm paid the appraisal value, State Farm nevertheless owes damages under the TPPCA because it delayed payment of the claim beyond the applicable statutory period—sixty days from receipt of the information requested under section 542.055. *See* TEX. INS. CODE § 542.058(a) (providing that unless another deadline applies, an insurer that delays payment of a claim for more than sixty days after the insurer receives all information reasonably requested and required under section 542.055 shall pay TPPCA damages as provided by section 542.060). State Farm argues that its timely payment of the appraisal amount, which was binding as to the amount of the loss, satisfied the TPPCA's requirements as a matter of law and forecloses TPPCA damages.

### c. Availability of TPPCA Damages for Payment of Appraisal Award

We must determine whether an insurer can be liable for TPPCA damages when it initially denied the claim but later paid the insured in full according to the amount of loss determined through the policy's appraisal process. We note at the outset that the insurance claim process is inherently adversarial. The adversarial process begins as soon as a claim is filed and ends only when the resolution of the claim is finally determined and accepted by the parties. The TPPCA governs the

---

[5] Although State Farm paid the appraisal amount less the deductible and depreciation, for simplicity we refer to payment of the appraisal amount or value.

13

insurer's request for necessary information, investigation, and evaluation of the claim, which then allows the insurer to accept and pay, or reject the claim. The appraisal process, as an agreed-upon mechanism for dispute resolution provided by the parties' insurance policy, is also part of the adversarial process; however, it exists to allow the insurer and insured to resolve a dispute as to the value of the property or amount of loss, without having to submit to the time and expense of litigation. *See, e.g.*, *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 412. When the appraisal process is initiated after the insurer has rejected a claim—that is, after the insurer has received all requested information from the claimant, conducted an investigation, evaluated the claim, and concluded that it is not liable under the policy—the issue generally becomes a contractual matter of dispute resolution, rather than a statutory matter of prompt payment of claims. Because the appraisal process provides an alternative to litigation, it often reflects a compromise between the parties. *See generally id.* at 407 (suggesting that appraisals serve as a means of compromise because they "provide a less expensive, more efficient alternative to litigation" (citation omitted)).

We first consider State Farm's argument that its initiation of the contractual appraisal process constituted an additional information request under section 542.055(b), extending the TPPCA's deadline to accept or reject a claim. *See* TEX. INS. CODE §§ 542.055–.056. If considered information necessary to evaluate the claim, State Farm contends that the time period for accepting or rejecting the claim did not begin until its receipt of the appraisal award, and that it therefore paid timely—within four business days after it received the information required to secure final proof of loss. *See id.* §§ 542.056–.057. Asserting that it complied with sections 542.055, .056, and .057,

14

State Farm argues that Barbara Tech cannot prevail on its claim for TPPCA damages. *See id.* § 542.060(a).

Under section 542.055(a), after receiving a claim, an insurer must acknowledge receipt, begin an investigation, and request from the claimant all items, statements, and forms that the insurer reasonably believes will be necessary to evaluate the claim. *See id.* § 542.055(a). The insured may then make "additional requests" for information when necessary "during the investigation of the claim." *See id.* § 542.055(b). We read "additional" to reference the initial information, meaning that the TPPCA authorizes the insurer to request information from the claimant in two phases: (1) an initial request made within fifteen business days of receiving the claim for information the insurer believes "at that time" will be required; and (2) additional requests for information revealed to be necessary during the course of the investigation. Because State Farm's appraisal demand was based on its contractual right to engage in a specific dispute resolution process and was not a request for items, statements, or forms from Barbara Tech to secure final proof of loss, we conclude that State Farm's use of the appraisal process falls outside the scope of section 542.055.[6]

Further, section 542.056(a) specifies that the "insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." *Id.* § 542.056(a). As such, the rejection or acceptance of a claim is the insurer's acknowledgment that

---

[6] Our analysis reflects only the facts at hand—invocation of the appraisal process after the insurer has requested all necessary items, statements, and forms; after the insurer has inspected and investigated; and after the insurer has rejected the claim. We do not address whether invocation of the policy's appraisal provision might have been appropriate during the investigation, before the insurer rejected the claim. Because the TPPCA is silent as to appraisals, we note that when a party can or must initiate the appraisal process is generally a matter of the parties' agreement in the policy. Practically speaking, when an insurance policy provides for an appraisal process to resolve a dispute as to the amount of loss, there is no need for a party to invoke the policy's appraisal provision before the insurer has an opportunity to complete its investigation, determine the value of the loss, and accept or reject the claim.

it had all the information it needed from the claimant to determine whether the claimant was entitled to benefits under the policy.[7] Because an insurer's rejection of a claim is based on all information the insurer deemed necessary, as well as the insurer's investigation, later invocation of the policy's appraisal provision does not somehow start the investigatory period anew. Where the policy provides for an appraisal process if the parties "disagree on the value of the property or the amount of loss," as the policy here does, and the appraisal process was initiated only after State Farm rejected the claim, having determined that the value of the covered loss was below the deductible, use of the contractual appraisal process was not part of the insurer's investigation.[8]

We next address State Farm's argument that full and timely payment in accordance with the appraisal forecloses any possibility of TPPCA damages. We have already explained that nothing in the TPPCA exempts appraisal payments from the TPPCA's payment deadlines or enforcement.[9]

---

[7] CHIEF JUSTICE HECHT asserts that "[n]othing in the Act suggests that after an insurer rejects a claim, the investigation cannot be reopened, either at the claimant's request or by the insurer on its own." *Post* at ___. He then concludes that re-opening the investigation resets the deadlines under the TPPCA. *Post* at ___. The TPPCA does not contemplate investigation after acceptance or rejection, just as it does not contemplate a later acceptance of a rejected claim. We do not read the TPPCA to ever prohibit an insurer from investigating and accepting liability when it owes the insured benefits under the policy. In fact, if relevant information becomes available after an insurer has rejected a claim, the insurer should consider it and determine whether that information changes the insurer's liability determination. But we see no support in the TPPCA for deadlines being altered based on an insurer investigating after it rejects a claim.

[8] We note that an insurer could obtain a non-contractual, third-party appraisal during its investigation of the claim to assist the insurer in assessing the value of the insured's loss. But such an appraisal would differ from use of the contractual appraisal process here, as the insurer would use that appraisal in determining the value of the loss, where here the policy's appraisal process resolved a dispute as to the insurer's value of loss; the insurer alone would pay for that appraisal, rather than the parties sharing the costs as the policy here provides; and the insured would not be bound by the appraisal award, as is the case under the policy here.

[9] In fact, the TPPCA contains a section devoted to applicability and a section devoted to exceptions, neither of which suggests that the appraisal process supplants the TPPCA. *See* TEX. INS. CODE §§ 542.052–.053. Had the Legislature intended for appraisal payments to never be subject to TPPCA damages for delayed payment, the Legislature could have so provided as it did for other exceptions in section 542.053, under which the TPPCA does not apply. *See id.* § 542.053 (including an exception where "the damage provisions of Section 542.060" do not apply).

16

But we must examine the TPPCA's deadline and enforcement provisions to determine how they apply in the context of contractual appraisals.

As explained, the TPPCA's investigation and evaluation requirements culminate in a determination either that the claim is covered and the amount of loss exceeds the deductible, in which case the insurer must notify the insured that it will pay the claim, or that the claim is rejected, in which case the insured must notify the insured of the reasons—for example, because the loss is not covered, the amount of the loss does not meet the deductible, or for some other reason under the policy. *See id.* §§ 542.055–.056. An insurer that accepts a claim must pay it within five business days. *See id.* § 542.057(a). When an insurer rejects a claim in accordance with sections 542.055 and .056 and notifies the insured of the reasons for the rejection, no other TPPCA deadlines or requirements apply at that point that could give rise to a claim under section 542.060, as there is no payment deadline without the insurer owing benefits under the policy. *See id.* § 542.060 (imposing TPPCA damages on "an insurer that is liable for a claim under an insurance policy" and fails to comply with a TPPCA requirement). Under the TPPCA, use of the appraisal process to resolve a dispute has no bearing on any deadlines or enforcing any missed deadlines.

As State Farm points out, courts of appeals have held that full and timely payment of an appraisal award precludes an insured from recovering damages under the TPPCA as a matter of law. *See, e.g.*, *Garcia*, 514 S.W.3d at 274–75 (explaining that payment of an appraisal award precluded TPPCA claims); *In re Slavonic Mut. Fire Ins.*, 308 S.W.3d at 563–64 ("Texas courts considering the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of [damages] under the Insurance Code's prompt payment provisions as a matter

17

of law." (citations omitted)). In affirming summary judgment for State Farm, the court of appeals relied heavily on its earlier decision in *Garcia v. Lloyds*. *See* 566 S.W.3d at 296–97 (citing *Garcia*, 514 S.W.3d at 274–79). In a factual scenario that mirrors the case at hand, the insured filed suit after the insurer rejected the claim, and the insurer then invoked the policy's appraisal provision. *See Garcia*, 514 S.W.3d at 274. The insured argued that the insurer was liable for TPPCA damages and attorney's fees, despite the insurer having timely paid the appraisal award. *See id.* The insured relied on the Fifth Circuit Court of Appeals' opinion in *Higginbotham v. State Farm Mutual Automobile Insurance*, 103 F.3d 456, 461 (5th Cir. 1997), which held that an insurer's wrongful rejection of a claim may be considered to have caused a delay in payment under the TPPCA and may be a basis for statutory interest and damages under section 542.060. *See Garcia*, 514 S.W.3d at 274–75 (citing *Higginbotham*, 103 F.3d at 461; *Graber v. State Farm Lloyds*, No. 3:13-CV-2671-B, 2015 WL 3755030, at *10 (N.D. Tex. 2015)). But the court in *Garcia* pointed out that *Higginbotham* did not involve use of an appraisal process and, distinguishing *Higginbotham*, held that payment of the appraisal award precluded the plaintiff's TPPCA claim. *See id.* at 275 (discussing *Higginbotham*, 103 F.3d at 461).

In *Higginbotham*, after the trial court bifurcated the insured's claims into separate trials—one for breach of contract and one for the statutory claims—the jury found State Farm liable for breach of contract and awarded damages. *See* 103 F.3d at 458. The trial court then considered whether State Farm owed TPPCA damages for its failure to pay the claim and ultimately denied the insured the statutory damages. *See id.* The Fifth Circuit reversed, holding that "[a] wrongful rejection of a claim may be considered a delay in payment for purposes of the 60-day rule and statutory

18

damages." *Id.* at 460; *see also, e.g.*, *Performance Autoplex II Ltd.*, 322 F.3d at 861 (following *Higginbotham*, explaining that "[s]tatutory damages apply if the insurer has delayed payment of a valid claim for more than sixty days")). The court reasoned that the evidence clearly showed that State Farm owed statutory damages under the TPPCA's prompt pay provisions because "State Farm chose to reject [the insured's] claim, which necessarily means it failed to pay within 60 days of its receipt of all necessary paperwork, as specified by [the TPPCA]." *Higginbotham*, 103 F.3d at 461. Moreover, the court explained that "if an insurer fails to pay a claim, it runs the risk of incurring this 18 percent statutory fee and reasonable attorneys' fees, . . . [and] State Farm lost when it was found liable for breach of contract." *Id.*

In contrast to *Higginbotham*, in this case there is no judgment determining that State Farm wrongfully rejected the claim. Instead, the parties used the contractual appraisal process to address the value of Barbara Tech's loss—resolving only the amount of policy benefits State Farm would owe if it owed anything. Because *Higginbotham* did not involve use of an appraisal, and because it involved a wrongful rejection finding, it provides no authority in favor of Barbara Tech's position.

Although generally short on statutory analysis, we do not disagree with the crux of the courts of appeals' opinions on which State Farm relies—use of the appraisal process to fully resolve a dispute as to the amount of policy benefits due, if owed at all, does not subject the insurer to TPPCA damages. *See, e.g.*, *Garcia*, 514 S.W.3d at 275; *In re Slavonic Mut. Fire Ins.*, 308 S.W.3d at 563. While we address the standard for TPPCA damages under section 542.060 below, we caution that to the extent these opinions could be read to excuse an insurer liable under the policy from having to pay TPPCA damages merely because it tendered payment based on an appraisal award, or to

19

foreclose any further proceedings to determine the insurer's liability under the policy, we disapprove of these opinions. *See* TEX. INS. CODE §§ 542.058, .060. Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline, regardless of use of the appraisal process.[10] *See id.*; *see also In re Allstate Cty. Mut. Ins.*, 85 S.W.3d 193, 198 (Tex. 2002) (orig. proceeding) (rejecting "the position that an appraisal's outcome establishes liability when we held that, unlike an arbitration provision, an appraisal provision 'only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss'" (citation omitted)).

### 2. State Farm's Liability

In its second ground for summary judgment, State Farm argues that it has not been shown to be, and cannot be shown to be, liable under the policy for Barbara Tech's claim. Given the terminology State Farm uses, and especially its use of the word "liable," as well as the language of the TPPCA, we construe State Farm's argument to be that the liability element in section 542.060(a) is negated as a matter of law. In reviewing whether State Farm met its summary judgment burden, we assume without deciding that section 542.060 provides the applicable standard for Barbara Tech to succeed on its claim for TPPCA damages.

---

[10] Here, State Farm did not even exercise its right to appraisal until well after the statutory deadline.

### a. Section 542.060

Section 542.060(a) specifies that, "[e]xcept as [otherwise] provided . . . , if an insurer that is *liable* for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay" the insured damages as specified by this section. *See* Tex. Ins. Code § 542.060(a) (emphasis added). We see no way under the language of the TPPCA that an insurer can be "liable" on the claim within the meaning of section 542.060 until it (1) has completed its investigation, evaluated the claim, and come to a determination to accept and pay the claim or some part of it; or (2) been adjudicated liable by a court or arbitration panel. If an insurer rejects a claim, it has concluded based on its investigation and evaluation that it owes no benefits under the policy and is not liable for the claim; unless and until the insurer later accepts the claim, thereby admitting liability, or there is a judgment that the insurer wrongfully rejected the claim, the insurer is not "liable for a claim under an insurance policy" under section 542.060.

Having determined that a rejected claim will not trigger TPPCA damages under section 542.060 absent an acknowledgment or finding of liability, we must determine whether the appraisal process, or subsequent payment, satisfies that liability element. We note that an insurer's use of the policy's appraisal process represents a willingness to resolve a dispute outside of court—often without admitting liability on the claim, or even specifically disclaiming liability—similar to a settlement. *See Breshears*, 155 S.W.3d at 343 (explaining that "an appraisal decision is intended 'to estop one party from contesting the issue of the value of damages in a suit on the insurance contract,'" not to determine liability (citation omitted)); *see also Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337, 345 (Tex. App.—Eastland 2018,

pet. dism'd) ("Within the insurance context, appraisal constitutes an alternative dispute resolution procedure because it settles a dispute regarding the amount of damages by means other than litigation . . . . [A]ppraisal may provide a 'less expensive, more efficient alternative to litigation.'" (citation omitted)). An insurer's payment under such circumstances results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability. *See generally Breshears*, 155 S.W.3d at 343. As such, the payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy for purposes of TPPCA damages under section 542.060.[11]

Barbara Tech relies on *Graber v. State Farm Lloyds* in arguing that when State Farm rejected the claim, it took a risk that it would later be subject to TPPCA damages. 2015 WL 3755030, at *8. *Graber*'s holding was predicated upon *Higginbotham*, which we have explained did not involve an appraisal and did involve a liability adjudication. *See id.* at *1, *8 (citing *Higginbotham*, 103 F.3d at 461). In *Graber*, the insured submitted a claim, and State Farm investigated, accepted, and paid the claim. *See id.* at *1. The insured demanded another inspection, State Farm obliged, and then State Farm provided a supplemental payment on the claim after it found additional damage to the property. *See id.* After the insured filed suit, the insurer demanded an appraisal. *See id.* Shortly after completion of the appraisal process, State Farm tendered payment in the amount of the

---

[11] State Farm reserved its right to contest liability under the policy even after paying the appraisal. In its January 9, 2015, letter invoking the contractual appraisal process, State Farm expressly stated: "By this request, State Farm does not waive any of the policy provisions, conditions, defenses, exclusions or limitations, and in fact, intends to rely on them throughout the appraisal process. The appraisal award will be subject to the Policy's provisions, conditions, exclusions and limitations." And in the August 25, 2015, letter accompanying payment of the appraisal amount, State Farm expressly stated that with the appraisal payment: "State Farm is not waiving any of the policy coverages, limitations, exclusions or provisions, all of which are specifically reserved."

appraisal. *See id.* at *4. The court in *Graber* explained the origins of the defense that prompt

payment of an appraisal award precludes a TPPCA claim:

> The first case to recognize a defense to TPPCA liability for the full and timely payment of an appraisal award was *Breshears*, 155 S.W.3d 340. In *Breshears*, the court was confronted with facts very similar to the facts in [*Graber*]. The insurer timely issued payment of the insured's claim, which the insured deemed insufficient. After the insured filed suit, the parties submitted their dispute to appraisal and the appraisers returned an award that exceeded the amount of the insurer's initial payment. Although the insurer timely paid the appraisal award, the insured argued that due to the delay caused by the appraisal process, their claim was not actually paid until long after the sixty-day limit imposed by the TPPCA. The court disagreed, concluding that the insurer's timely initial payment served to satisfy the requirements of the TPPCA. Contrary to the suggestion of later cases and State Farm, however, the *Breshears* court did not hold that the insurer's full and timely payment of the appraisal award precluded the insured's claim for statutory interest under the TPPCA. Rather, the court merely observed that "the fact that the appraisal process was later invoked did not alter the fact that the insurer complied with the Insurance Code . . . ."

*Id.* at *9 (citations & alterations omitted). Then, the court reasoned that the intent of *Higginbotham*

was to hold insurers strictly liable for failure to pay promptly an insured's claims where liability has

been established, and that *Breshears* conflicted with this intent. *See id.* at *10. The court also

reasoned that *Breshears* conflicted with this Court's precedent holding insurers who partially pay

claims liable for TPPCA damages on the unpaid portions of those claims until they are fully paid.

*See id.* (citing *Republic Underwriters Ins. v. Mex-Tex*, 150 S.W.3d 423, 427–28 (Tex. 2004)).

Concluding that allowing for full and timely payment of an appraisal award to preclude TPPCA

claims would conflict with precedent of this Court and the Fifth Circuit, the court in *Graber* held

that State Farm's full and timely payment of the appraisal value did not preclude TPPCA claims for

statutory interest and attorney's fees. *See id.*

23

We find *Graber*'s reasoning—that *Higginbotham* speaks to an insurer's failure to pay promptly an insured's claims where liability has been established—to be consistent with our holding today. *See id.* Here, State Farm never denied that Barbara Tech's loss was covered, but merely disputed the extent of the loss and whether it met the deductible—disputing its liability on the claim. And there is no dispute as to State Farm's compliance with the procedural requirements of the TPPCA in responding to, investigating, and evaluating the claim. Thus, our reasoning is consistent with *Graber* to the extent that State Farm's liability on the claim has not been established through the TPPCA process or as a result of the contractual appraisal process.

We also find some of the reasoning in *Breshears* persuasive. *See generally Breshears*, 155 S.W.3d at 343–45. State Farm initially paid the Breshears' claim, and State Farm later made an additional payment in accordance with the appraisal. *See id.* at 342. The court affirmed summary judgment in favor of State Farm regarding the Breshears' claims under the TPPCA. *See id.* at 345. The court explained:

> The Breshears argue that because of the appraisal process, they were not actually paid until after State Farm paid them the difference between the first payment and the appraisal award, which occurred long after the sixty-day statutory limit. The Breshears also argue that by invoking the appraisal process, State Farm did not notify them as to whether it intended to pay their claim within the time required by the code. We disagree. The Breshears were paid by State Farm within the sixty-day limit, and they were notified that State Farm would pay the claim when State Farm sent them an estimate of the cost of their repairs accompanied by a check. The fact that the appraisal process was later invoked does not alter the fact that State Farm complied with the Insurance Code . . . .

*Id.* Likewise, we hold in this case that State Farm's invocation of the contractual appraisal process did not supplant its earlier rejection of the claim in accordance with the TPPCA.

24

To be clear, nothing in the TPPCA suggests that the invocation of a contractual appraisal provision alters or suspends any TPPCA requirements or deadlines. Rather, under the TPPCA, until an insurer is determined to owe the claimant benefits and thus is liable under the policy—either by accepting the claim and notifying the insured that it will pay, or through an adjudication of liability—the insurer is required to pay nothing, is subject to no payment deadline, and is not subject to TPPCA damages for delayed payment. *See* TEX. INS. CODE § 542.060(a) (imposing prompt pay damages when an insurer is liable under the policy and violated a provision of the TPPCA). This is not to say that a rejected claim can never trigger damages under the TPPCA; to the contrary, if an insurer later accepts a claim after initially rejecting it, or if an insurer is adjudicated liable for a claim it rejected, TPPCA deadlines and prompt pay requirements will apply.[12] *See id.* §§ 542.057–.060. But use of a policy's appraisal process to resolve a dispute as to the value of loss—that is, the amount of benefits the insured would be entitled to under the policy if the insurer were determined liable for the claim—and payment based on the appraisal has no bearing on the

_____

[12] Even after acknowledging receipt of the claim, investigating it, and then rejecting the claim (that is, denying liability), an insurer may later choose to accept the claim, admitting liability under the policy. For example, if a contractual appraisal provision such as the one in this case is invoked after the insurer has received all information requested from the claimant, conducted an investigation, and rejected the claim, the insurer may choose to: (1) refuse to pay the appraisal amount and maintain its denial of liability for the claim; (2) pay the appraisal amount without accepting liability; or (3) accept the claim, essentially admitting it was incorrect to deny liability initially, and then pay the claim in accordance with the appraisal amount. If the insurer chooses the third option, it becomes liable for the claim despite its earlier rejection of the claim, and it will be subject to TPPCA damages for failure to pay within the applicable TPPCA deadlines. *See* TEX. INS. CODE §§ 542.056(a), .057(a), .058, .060. If the insurer chooses the first option, refusing to pay an appraisal amount and continuing to deny liability, the insured could choose to pursue litigation. And if the litigation resulted in a judgment that the insurer was in fact liable on the claim, the insurer would then owe the amount of the claim, as fixed by the binding appraisal, and TPPCA damages if the insurer failed to pay the claim timely in accordance with section 542.058. *See id.* §§ 542.058, .060. This opinion addresses only the second option, as those are the facts of the case before us.

25

TPPCA's payment deadlines or enforcement of those deadlines. *See In re Allstate Cty. Mut. Ins.*, 85 S.W.3d at 198 (citation omitted).

Here, Barbara Tech filed suit after State Farm investigated, evaluated, and ultimately rejected the claim.[13] The parties' insurance policy sets forth the parameters of the appraisal process, providing the parties an alternative to seeking a judgment to resolve a dispute as to the value of the claim. State Farm invoked the appraisal provision because Barbara Tech disputed the insurer's determination that the amount of the loss was below Barbara Tech's deductible, which resulted in rejection of the claim. At that point, the parties were already in litigation, and the appraisal provision offered an alternative process to resolve the valuation dispute.[14] While the TPPCA does not acknowledge the appraisal process—neither explicitly subjecting it to the TPPCA's deadlines or enforcement, nor exempting it—chapter 542 establishes that an insurer is not subject to TPPCA damages for delayed payment unless it was subject to a payment deadline because it owed benefits

---

[13] Again, Barbara Tech initially asserted a bad faith claim for failure to conduct a reasonable investigation, but Barbara Tech dropped that claim after State Farm paid the appraisal value, leaving only Barbara Tech's claim for prompt pay damages under the TPPCA. As a result, no allegations of bad faith as to State Farm's investigation and evaluation of Barbara Tech's claim remain. Although we caution that an insurer should not summarily deny a claim without following the investigatory and evaluation procedures outlined in the TPPCA, we do not address whether or how a failure to comply in good faith with the TPPCA's investigation and evaluation requirements might affect a claim for TPPCA damages, as that issue is not before us.

[14] JUSTICE BOYD would hold that voluntarily paying the appraisal amount constitutes acceptance of the claim. *See post* at ___. We disagree. An appraisal is binding only as to the amount of the loss on the claim, not as to liability. *See, e.g.*, *In re Allstate Cty. Mut. Ins.*, 85 S.W.3d at 198 (explaining that an appraisal is not used to determine liability (citation omitted)); *Breshears*, 155 S.W.3d at 343. So an insurer that pays an appraisal amount as to a rejected claim—where the insurer has denied liability—does not satisfy section 542.060's requirement that the insurer be "liable for a claim under an insurance policy," unless the insurer specifically accepts the claim or is adjudicated liable. *See* TEX. INS. CODE § 542.060(a). We find no support for the proposition that payment of an appraisal amount on a rejected claim establishes liability for purposes of section 542.060.

under the policy. We hold that State Farm's payment of the appraisal value neither established liability under the policy nor foreclosed TPPCA damages under section 542.060.[15]

This is not to say that an insurer can simply deny claims outright and pay them later, for the purpose of avoiding TPPCA deadlines and damages. But when an insurer complies with the TPPCA in responding to the claim, requesting necessary information, investigating, evaluating, and reaching a decision on the claim, use of the contract's appraisal process does not vitiate the insurer's earlier determination on the claim. *See Mainali Corp. v. Covington Specialty Ins.*, 872 F.3d 255, 258–59 (5th Cir. 2017) (holding that an insurer did not violate the TPPCA when it complied with the TPPCA's requirements to investigate and evaluate a claim but later made a payment based on the appraisal); *Breshears*, 155 S.W.3d at 345 (same). Here, there is no remaining allegation of bad faith, or that State Farm violated the TPPCA in requesting information, investigating, or evaluating the claim. The only remaining allegation concerns whether State Farm could owe damages under the TPPCA. Because State Farm did not conclusively establish that it is not liable for Barbara Tech's claim, as it must to avoid TPPCA damages as a matter of law under section 542.060, we hold that State Farm was not entitled to summary judgment.

### b. Section 542.058

Section 542.058(a) provides that "[e]xcept as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055,

---

[15] If State Farm had refused to pay the appraisal value, instead taking its chances in litigation, and Barbara Tech obtained a judgment that State Farm was liable on the claim and thus had wrongfully withheld payment of the claim, then the parties agree that the judgment would subject State Farm to TPPCA damages for delay in paying the claim. *See* TEX. INS. CODE §§ 542.058(a), .060; *see also Higginbotham*, 103 F.3d at 461 (holding that an adjudication of the insurer's wrongful rejection of a claim may support statutory damages under section 542.060(a)). We agree.

delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058(a). Section 542.058(b) provides an exception, whereby section 542.058(a) "does not apply in a case in which it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer." *Id.* § 542.058(b).

The parties have not briefed the interplay between section 542.058 and section 542.060. Neither party has specifically raised the issue of whether section 542.058's "shall pay damages" language could be the basis for TPPCA damages for late payment, independent of section 542.060's limitation of TPPCA damages to insurers "liable on a claim under an insurance policy." Moreover, the parties have not briefed the interplay between section 542.060's liability requirement and section 542.058's exception for a claim that is found to be "invalid" and "should not be paid."

We note that when discussing the damages standard under the TPPCA and its predecessor, this Court has recognized the liability element for imposing TPPCA damages. *See Lamar Homes, Inc.*, 242 S.W.3d at 16 ("The prompt-payment statute provides that an insurer, who is 'liable for a claim under an insurance policy' and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for 'interest on the amount of the claim at the rate of eighteen percent a year as damages, together with reasonable attorney's fees.'" (citation omitted)); *Boyd*, 177 S.W.3d at 922 (explaining that "[t]here can be no liability under [the TPPCA] if the insurance claim is not covered by the policy" because TPPCA damages are to be awarded when the insurer is liable under the policy

28

(citation omitted)); *Bonner*, 51 S.W.3d at 291 ("To successfully maintain a claim under [the TPPCA], a party must establish three elements: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [the TPPCA] with respect to the claim."). And this is not the only court to discuss the TPPCA damages standard in such a way. *See, e.g.*, *Cox Operating, L.L.C.*, 795 F.3d at 505–09 ("[Section] 542.058 provides an alternate payment deadline to the one set out in § 542.057 . . . . As referenced in § 542.058, § 542.060 provides the enforcement mechanism for [the TPPCA's] deadlines . . . . In sum, the [TPPCA] (1) imposes on insurers a series of claims-handling deadlines, §§ 542.055–.058; and (2) enforces those deadlines by requiring insurers who fail to comply with them (and who ultimately are liable on the claim) to pay statutory interest." (citations omitted)); *Tremago, L.P.*, 602 F. App'x at 983–84 (holding that "[i]n order to prevail on a [TPPCA] claim, the insured must show '(1) a claim under an insurance policy (2) for which the insurer is liable and (3) that the insurer has not followed one or more sections' of the Act," and that without an admission or finding of liability, the insurer's settlement payment did not subject it to TPPCA damages (citation omitted)). But this Court has yet to conduct a thorough statutory analysis of section 542.058 in relation to section 542.060.

Because it is not necessary to our decision on the summary judgment grounds before us, we do not reach this issue. Therefore, we do not opine on whether section 542.060's liability requirement applies to a claim for TPPCA damages based on late payment under section 542.058.

### c. Other Remedies

Importantly, while the TPPCA does not address every aspect of the inherently adversarial insurance claim process—namely, the contractual appraisal process—we observe that an insured is not left without a remedy when the insurer fails to act in good faith in investigating, evaluating, or rejecting a claim. If an insured believes the insurer has rejected a claim in bad faith, the insured may assert a claim under chapter 541 of the Insurance Code or a claim for breach of contract. *See* TEX. INS. CODE ch. 541. *But see Ortiz v. State Farm Lloyds*, ___ S.W.3d ___, ___ (Tex. 2019).

The Insurance Code provides for an action against an insurer that commits "an unfair or deceptive act or practice in the business of insurance." TEX. INS. CODE § 541.151. An insured may have a claim for an insurer's failure to conduct a reasonable investigation, wrongful denial of a claim, or failure to resolve a claim in good faith. *See id.* § 541.060(a). Likewise, an insured may seek recourse for an insurer's wrongful acts under the policy, through a breach of contract claim. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (recognizing that an insured may have a claim for both breach of contract and violation of the Insurance Code, and that "an 'insurance policy is a contract' that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed" (citation omitted)). A breach of contract claim, however, is distinct and independent from a claim that an insurer violated the Insurance Code. *See id.* at 489. Thus, we caution that outright denial of insureds' claims without good faith investigation and evaluation is not an insurer's answer to TPPCA prompt pay damages.

Our analysis in this case might be different had the Legislature specified the effect, if any, of invoking an appraisal provision, such as the one in the parties' insurance policy. As noted above,

the Legislature knows how to craft a statutory scheme governing the payment and settlement of insurance claims, with appraisals in mind. *See* TEX. INS. CODE § 2210.574 (creating a role for appraisals in the windstorm insurance context). But the Legislature did not do so in the TPPCA, and "[w]e are not free to rewrite the statute[] to reach a result we might consider more desirable." *See, e.g.*, *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988 ) (orig. proceeding); *see also Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex. 1995) (orig. proceeding) (per curiam) ("It is not within the province of this Court to reconstrue, rewrite, or contravene a . . . statute when the intent of the Legislature is clear." (citations omitted)). If the Legislature desires for invocation of an appraisal provision, such as the one here, to extend or revive the investigation and evaluation period despite the insurer's rejection of the claim, it is the Legislature's province to provide for that in the statute. Likewise, if the Legislature desires for an insurer's payment of an appraisal award to make the insurer "liable" on a rejected claim, it is the Legislature's province to so provide. In fact, nothing in the TPPCA suggests a legislative intent to encompass contractual appraisal provisions at all—it merely allows for the prompt processing, investigation, evaluation, and payment of claims under the TPPCA without specifying the effect of a contractual appraisal process. If the Legislature wishes to impose penalties for failure to pay an appraisal award within a specific time, akin to the sixty-day rule in section 542.058, it can so provide. Until the Legislature makes clear otherwise, we interpret the language the Legislature enacted and conclude that payment of an appraisal award on a rejected claim does not subject the insurer to prompt pay damages under section 542.060 unless and until the insurer either accepts liability under the policy or is adjudicated liable. *See Molinet*, 356 S.W.3d at 414–15 (citing TEX. GOV'T CODE § 311.011(a) and noting that

31

it is the Court's responsibility to interpret statutes according to the language the Legislature used, absent a context indicating a different meaning or an absurd result).

## C. Barbara Tech's Motion for Summary Judgment

In its traditional motion for summary judgment, Barbara Tech argued that State Farm is liable for TPPCA damages as a matter of law because it failed to pay Barbara Tech's claim within section 542.058's sixty-day deadline, instead later paying after the appraisal. Barbara Tech alleges the law is clear that if an insurer "initially rejects or underpays a claim that is later determined to be due, whether in litigation or appraisal or otherwise, then [the insurer] is strictly liable [for] violating section 542.058 and must pay the statutory penalties." And Barbara Tech asserts that when State Farm rejected a claim that was later determined to be "due and owing," it became liable for having delayed payment and thus owes TPPCA damages. If State Farm is entitled to avoid TPPCA damages because it paid the appraisal value, Barbara Tech contends, this in effect allows insurers to employ dilatory tactics in improperly delaying the payment of claims, or wrongfully denying claims, without any consequences and counter to the purpose of the TPPCA.

We believe Barbara Tech's contention that the appraisal established that the claim was "due and owing" amounts to the same argument as "liable" under section 542.060, which we have already addressed. As explained above, payment of an appraisal award does not determine liability, and there has been no adjudication that State Farm was liable under the policy. Even if we were to read Barbara Tech's argument to be that State Farm is strictly liable under section 542.058—that is, any payment made after the sixty-day deadline subjects an insurer to TPPCA damages barring an adjudication that the claim is invalid and should not be paid—the result is no different. There has

been no proceeding to consider the validity of the claim and whether State Farm should have paid it; as such, we cannot determine that Barbara Tech is entitled to TPPCA damages as a matter of law. Barbara Tech has not carried its burden on summary judgment to prove conclusively that the claim was "due and owing" or that it is entitled to TPPCA damages as a matter of law.

## D. Actual Damages

Barbara Tech further argues that the appraisal value constituted an award of actual damages. Barbara Tech bases this argument on this Court's holding in *Menchaca*, which we issued after the trial court and court of appeals ruled in this case. *See* 545 S.W.3d at 489. Specifically, Barbara Tech argues that the appraisal process established that State Farm wrongfully rejected the claim and that the appraisal award established Barbara Tech's right to receive benefits under the insurance policy such that it could recover those benefits as "actual damages," because State Farm's wrongful denial of Barbara Tech's valid claim caused the loss of the benefits. Barbara Tech argues, by extension, that if the policy benefits can be actual damages for the purpose of determining the availability of statutory and other extra-contractual damages, they can also be actual damages for the purpose of assessing damages under the TPPCA. We disagree.

We held in *Menchaca* that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under [the Insurance Code] if the insurer's statutory violation causes the loss of the benefits." *Id.* at 495. We also explained that "an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Id.* We have defined "actual damages" as "damages recoverable at common law," which we held includes "'benefit-of-the-bargain' damages

33

representing 'the difference between the value as represented and the value received.'" *Id.* at 489 (citations omitted).

Consistent with our reasoning above that an appraisal award does not vitiate the insurer's determination of a claim based on investigation and final proof of loss, but rather represents a contractual mechanism to resolve a dispute as to the amount of loss, an appraisal value also is not an award of actual damages, as Barbara Tech contends. Ordinarily, a finding of liability is a prerequisite to an actual damages award. *See, e.g.*, *Huddleston v. Pace*, 790 S.W.2d 47, 52 (Tex. App.—San Antonio 1990, writ denied) (explaining that a "prerequisite to recovery of damages is the establishment of liability"). Invoking a contractual appraisal provision after having already rejected the claim does not determine liability on a claim. *See In re Allstate Cty. Mut. Ins.*, 85 S.W.3d at 198 (acknowledging that an appraisal is not used to determine liability (citation omitted)); *Breshears*, 155 S.W.3d at 343 (explaining that "an appraisal decision is intended 'to estop one party from contesting the issue of the value of damages in a suit on the insurance contract,'" not to determine liability (citation omitted)). There is not yet an adjudication as to whether State Farm is liable under the policy—and therefore no determination as to whether State Farm is liable for TPPCA damages. As such, there is no liability or right to policy benefits upon which to base an award of actual damages. We hold that because paying an appraisal amount, although binding as to the amount of the loss on the claim, is not a determination as to the insurer's liability, it does not represent actual damages as to payment on the claim unless an insurer either accepted liability or is adjudicated liable.

## E.  Disposition

In the trial court, the parties submitted cross motions for summary judgment.  In its motion, Barbara Tech argued that it is entitled to TPPCA damages as a matter of law.  State Farm, in its cross motion for summary judgment and response to Barbara Tech's motion, argued that as a matter of law it is not subject to TPPCA damages.[16]  The trial court denied Barbara Tech's motion and granted State Farm's, and the court of appeals affirmed.[17]  566 S.W.3d at 296, 297.

We hold that invocation of the contractual appraisal provision to resolve a dispute as to a claim rejected in accordance with the TPPCA's procedural requirements neither subjects an insurer to TPPCA damages nor insulates the insurer from TPPCA damages.[18]  An insurer will become liable for TPPCA damages under section 542.060 only if it (1) accepts liability or is adjudicated liable under the policy, and (2) violated a TPPCA deadline or requirement.

---

[16] State Farm expressly incorporated its arguments in its response to Barbara Tech's summary judgment motion in its arguments in its cross motion for summary judgment.

[17] Although Barbara Tech challenged both the denial of its motion and the granting of State Farm's, the court of appeals appears to have ruled only as to State Farm's motion, while addressing the legal issue presented in both motions.  *See* 566 S.W.3d at 296–97 (holding that the trial court did not err in granting State Farm's summary judgment motion and rendering judgment that Barbara Tech take nothing on its TPPCA claim).

[18] Contrary to CHIEF JUSTICE HECHT's suggestion that our holding would impede the utility of appraisals, *see post* at ___, our opinion merely recognizes that under the TPPCA, the Legislature did not account for the use of a contractual appraisal process and did not provide an exception for claims resolved through that process.  We do not discourage use of appraisals in resolving disputes as to the amount of a claim; to the contrary, we believe, as this Court has previously acknowledged, that appraisals can provide a cost-effective and efficient mechanism for resolving disputes as to the amount of loss.  *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 412.  But this Court has never indicated that use of the appraisal process forecloses future proceedings to determine the insurer's liability.  *See Johnson*, 290 S.W.3d at 889–90 (concluding that "limiting appraisal to damages and not liability is surely still correct"); *In re Allstate Cty. Mut. Ins.*, 85 S.W.3d at 198 ("[L]ong ago, this Court rejected the position that an appraisal's outcome establishes liability when we held that, unlike an arbitration provision, an appraisal provision 'only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts.'" (quoting *Clancy*, 8 S.W. at 631)).  And our holding does not always subject insurers to TPPCA damages for payments of post-claim-rejection appraisal awards as CHIEF JUSTICE HECHT asserts, *see post* at ___; rather, true to the language of the TPPCA, our holding does not insulate insurers from TPPCA damages when they were liable and failed to comply with the TPPCA's deadlines or requirements.

In considering the parties' cross motions for summary judgment, we conclude that neither party has met its burden of establishing that it is entitled to judgment as a matter of law. *See Dorsett*, 164 S.W.3d at 661 (explaining that on summary judgment this Court renders the judgment the trial court should have rendered (citation omitted)). Barbara Tech has not demonstrated that State Farm is liable for TPPCA damages as a matter of law. *See* TEX. INS. CODE §§ 542.058, .060. Nor has State Farm demonstrated that TPPCA damages are foreclosed as a matter of law, as tender of the appraisal amount does not preclude TPPCA damages. And under the TPPCA, an insurer can avoid damages if it is not liable under the insurance policy, if it complied with all requirements and deadlines, or if the claim is invalid and should not have been paid—showings that State Farm has not made on summary judgment. *See* TEX. INS. CODE §§ 542.058, .060.

Having concluded that neither party is entitled to summary judgment, we remand the case to the trial court for further proceedings. On remand, the parties will have the opportunity to present argument as to the applicable TPPCA standard. To the extent that section 542.060 applies, Barbara Tech will have the opportunity to argue that State Farm owed Barbara Tech benefits under the policy, was therefore "liable" under the policy when it rejected the claim, and thus owes damages under the TPPCA. And State Farm will have the opportunity to challenge that assertion of liability and argue that it owed no benefits under the policy. To the extent that section 542.058 applies, State Farm will have the opportunity to argue that Barbara Tech's claim is invalid and should not have been paid, making it not subject to prompt pay damages under the TPPCA.[19]

---

[19] We do not address the relationship between "liable," "invalid," "should be paid," and "right to receive benefits," as that issue has not been raised or briefed in this Court. *See* TEX. INS. CODE § 542.058(b) (providing that the delayed payment provision in section 542.058(a) "does not apply in a case in which it is found as a result of arbitration

36

### III. Conclusion

Under the TPPCA, an insurer must pay damages in the form of 18% interest on the amount of the claim and reasonable and necessary attorney's fees if it delays payment of a claim for more than the applicable statutory period or sixty days. *See* TEX. INS. CODE §§ 542.058, .060. We hold that neither State Farm's invocation of the policy's appraisal process for resolution of a dispute as to the amount of loss, nor State Farm's payment based on the appraisal amount, exempts State Farm from TPPCA damages as a matter of law. And without State Farm having accepted liability under the policy or having been adjudicated liable, we hold that Barbara Tech is not entitled to TPPCA damages as a matter of law. We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Paul W. Green
Justice

OPINION DELIVERED:  June 28, 2019

---

or litigation that a claim received by an insurer is invalid and should not be paid by the insurer"); *id.* § 542.060(a) (providing that "if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay" TPPCA damages); *Menchaca*, 545 S.W.3d at 489 (providing that "an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as 'actual damages' under the Insurance Code if the insurer's statutory violation causes the loss of the benefits").